946 So.2d 610 (2007)
Eric Gabriel GRIFFIN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-5199.
District Court of Appeal of Florida, Second District.
January 5, 2007.
*611 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Eric Gabriel Griffin appeals his judgment for sexual battery with threat of force and the resulting mandatory sentence of thirty years in prison as a prison releasee reoffender. We affirm Mr. Griffin's conviction without further comment. We write to address various sentencing issues that were raised in the trial court by way of motions to correct sentencing errors *612 pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).
The circuit court entered Mr. Griffin's judgment and sentence on November 18, 2004, and Mr. Griffin timely filed a notice of appeal. On June 29, 2005, Mr. Griffin's appellate counsel filed an initial motion to correct sentencing error pursuant to rule 3.800(b)(2).[1] The clerk of the circuit court issued a certificate on September 20, 2005, indicating that no ruling or order had been entered on this motion. Appellate counsel then filed a second or amended motion to correct sentencing error on November 17, 2005. This motion argued that certain documents admitted at sentencing to support the prison releasee reoffender sentence were not properly authenticated and were therefore inadmissible, and that certain costs were improperly imposed because the statutes regarding the costs were enacted after the date of Mr. Griffin's offense.[2]
On January 25, 2006, the circuit court issued an order requiring the State to respond to the second or amended motion to correct sentencing error. On January 30, 2006, however, the clerk of the circuit court issued a certificate indicating that no ruling had been issued and no order had been entered on the second motion. As a result, the parties proceeded to brief this appeal.
Thereafter, however, the circuit court acted upon the motion to correct sentencing error. The circuit court apparently granted the motion and held a new sentencing hearing at which it ensured that the documents supporting Mr. Griffin's sentence were properly authenticated and entered into evidence. The circuit court then issued a new sentence on May 10, 2006. This "amended" sentence was otherwise identical in its terms to the initial sentence. Mr. Griffin filed a notice of appeal of the amended sentence. Instead of permitting a new appeal of this judgment and sentence, we ordered the record to be supplemented with the amended sentence and the documents leading up to it.
Initially, we must reverse the amended sentence because the circuit court lacked jurisdiction to rule on the motion or enter the amended sentence when it did so. Pursuant to rule 3.800(b)(2)(B), the circuit court was required to rule on this motion on or before January 16, 2006, sixty days from the date the motion was filed. When the circuit court failed to rule on the motion within that time frame, the motion was deemed denied. Id. Once the period expired, the circuit court lacked jurisdiction to address the merits of the motion or enter an amended sentence. See Conroy v. State, 933 So.2d 687 (Fla. 2d DCA 2006).[3] We therefore reverse the amended sentence. However we also conclude that the initial sentence, identical in terms to the amended sentence, should be affirmed, with the *613 exception of certain costs the court imposed.
First, we conclude that any issue regarding the admissibility of evidence presented at the sentencing hearing to support prison releasee reoffender sentencing was waived when Mr. Griffin's counsel failed to object to the evidence. It could not be resurrected by a motion to correct sentencing error. The second or amended motion to correct sentencing error asserted that the circuit court admitted into evidence a "crime and time" letter prepared by the Department of Corrections without proper authentication. Appellate counsel for Mr. Griffin acknowledged that Mr. Griffin's trial counsel had not objected to the document, and thus appellate counsel sought to preserve this issue for appeal as a "sentencing error" by objecting to the evidence in the second motion filed under rule 3.800(b)(2).
We conclude that the admissibility of such evidence is not a proper subject for a motion under rule 3.800(b). "Sentencing error" for purposes of this motion was never intended to cover any and all issues that arise at sentencing hearings and could have been subject to objection at the hearing. The rule was not intended to circumvent rules requiring contemporaneous objections or enforcing principles of waiver. It was not intended to give a defendant a "second bite at the apple" to contest evidentiary rulings made at sentencing to which the defendant could have objected but chose not to do so. It was not intended as a broad substitute for a postconviction claim of ineffective assistance of counsel for counsel's representation at a sentencing hearing. Instead, it was intended to address errors to which the defendant had no meaningful opportunity to object and matters that rendered the sentence otherwise subject to review under rule 3.800(a).
Rule 3.800(b)(2) was enacted shortly after the enactment of the Criminal Appeal Reform Act of 1996. Based upon the legislature's stated intent in that Act that "all terms and conditions of direct appeal and collateral review be strictly enforced . . . to ensure that all claims of error are raised and resolved at the first opportunity," see § 924.051(8), Fla. Stat. (Supp. 1996), the supreme court sought to establish a mechanism to preserve sentencing errors for appeal in circumstances in which the defendant did not have an adequate opportunity to register an objection. See Amendments to Florida Rules of Criminal Procedure 3.111(e) and 3.800 and Florida Rules of Appellate Procedure 9.020(h), 9.140, and 9.600, 761 So.2d 1015, 1016 (Fla.2000).
Because sentencing documents are often created and served after the sentencing hearing, there has long been a problem with written sentences containing terms and conditions that were not imposed in open court and to which the defendant never received an opportunity to object. Rule 3.800(b) was created to address these issues. It also permits counsel to correct the kinds of issues that can be raised at any time because they render the sentence illegal. This distinction may admittedly be a little imprecise at times, but what is clear is that the motion was never intended to permit counsel to reopen a sentencing hearing merely to do a better job than was done at that hearing.
This case provides a prime example of why the rule should not be applied to these circumstances. Mr. Griffin's trial counsel appeared at sentencing and could have objected to the lack of authentication of the "crime and time" letter. His failure to do so waived this issue. Indeed, our record now reflects that counsel's failure to object may well have arisen from the fact that the document's contents were accurate *614 and thus the document could have been properly authenticated, albeit by further effort and inconvenience to the State. When evidentiary rulings are unchallenged at sentencing, the defendant generally waives any objection. Of course, if the failure to object somehow prejudices the defendanti.e., an unauthenticated document turns out to be inaccurate and the authentic document would not permit the sentence imposedthen the defendant may have grounds for a motion for postconviction relief alleging ineffective assistance of counsel. We therefore affirm the imposition of the prison releasee reoffender sentence in this case.[4]
Mr. Griffin's second or amended motion to correct sentencing error is appropriate, however, as it relates to the imposition of three separate costs. Mr. Griffin committed his offense on November 2, 2002. When Mr. Griffin was sentenced in November 2004, the costs the court imposed included, among other items, a $65 cost pursuant to section 939.185, Florida Statutes (2004), and costs of $2 and $150 pursuant to section 938.085, Florida Statutes (2004).[5]
Section 939.185 was enacted effective July 1, 2004, see ch.2004-265, §§ 88, 109, Laws of Fla., and section 938.085 was enacted effective July 1, 2003, see ch.2003-114, §§ 3, 5, Laws of Fla. Thus neither statute was in effect at the time Mr. Griffin committed his offense in 2002. Notably, both statutes require the respective costs be imposed "when a person pleads guilty or nolo contendere to, or is found guilty of" a crime. Facially, then, the statute does not rely on an offense date but would seem to apply to a person who enters a plea or is found guilty after the effective date of the statutes.
This court has held specifically that the costs called for by these statutes could not be imposed on a defendant who committed his crime prior to their effective dates. See Cutwright v. State, 934 So.2d 667, 668 (Fla. 2d DCA 2006) (stating, "Costs may not be imposed where the authorizing statutes were enacted after the date of the offense. See Hayden v. State, 753 So.2d 720, 721 (Fla. 2d DCA 2000)"); see also Gonzalez v. State, 939 So.2d 224 (Fla. 2d DCA 2006) (involving sections 775.083(2) and 939.185, Florida Statutes (2004)); Waller v. State, 911 So.2d 226, 229 (Fla. 2d DCA 2005) (involving section 939.18, Florida Statutes (2003)); Pierce v. State, 779 So.2d 286 (Fla. 2d DCA 1998), quashed on other grounds, 734 So.2d 399 (Fla.1999) (involving costs for Juvenile Assessment Center and Teen Court Programs).
We acknowledge that these cases do not contain a detailed analysis of the application of principles of ex post facto to costs that are enacted after a defendant commits a crime but before the defendant is sentenced. Indeed, the State conceded error in Cutwright. Nevertheless, we follow this precedent and hold that the costs imposed here were improper.
In Ridgeway v. State, 892 So.2d 538 (Fla. 1st DCA 2005), the First District attempted a more detailed analysis of the application of ex post facto principles to costs imposed at sentencing. The First District specifically decided that imposing *615 the cost required by section 939.185 on a defendant who committed his crime before its effective date did not violate the prohibition against ex post facto laws. The First District concluded, "Assessment of costs violates ex post facto prohibitions only when the length of an inmate's sentence can be increased by failure to pay the costs." Id. at 540. Because the First District also concluded that "the statute does not subject a violator to criminal penalties such as additional prison time or loss of gain-time for failure to pay the cost," the court held that "the cost does not enhance punishment." Id. at 540; cf. Goad v. Fla. Dep't of Corr., 845 So.2d 880 (Fla.2003) (concluding that the Florida Civil Restitution Lien and Crime Victims' Remedy Act's provisions requiring a defendant to pay costs of incarceration were civil remedies not subject to ex post facto prohibitions). But see § 939.04, Fla. Stat. (2004) (providing, "[i]n all cases less than capital, wherein the defendant may be adjudged to pay costs, a capias may be issued, as is provided for the collection of fines and forfeitures").
The issue seems more difficult than the existing precedent would acknowledge. While Ridgeway presents its position well, we are not convinced that we should treat costs contained in statutes that apply only in criminal cases to convicted criminal defendants as "civil." This is particularly troublesome when the failure to pay those costs can lead to further incarceration, at least in the case of a sentence of probation. We cannot equate these costs with civil filing fees that are assessed against either the losing plaintiff or the losing defendant and that are enforceable only as a judgment lien.[6] As such, we follow our precedent in Cutwright and remand for the circuit court to strike the $65 cost pursuant to section 939.185 and the $2 and $150 costs pursuant to section 938.085. We certify conflict with the First District's opinion in Ridgeway, 892 So.2d 538.
Affirmed in part, reversed in part, and remanded to strike amended sentence and specified costs in initial sentence.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] This motion argued that the imposition of a mandatory minimum term of imprisonment as a prison releasee reoffender was a form of "taxation without representation." This argument lacks merit, and we do not further address it. See Calloway v. State, 914 So.2d 12, 13 (Fla. 2d DCA 2005).
[2] This court has not prohibited the filing of successive motions under rule 3.800(b)(2) so long as the motions are filed prior to the initial brief. Generally, we try to accommodate counsels' efforts to resolve sentencing issues for defendants while they still have legal representation. There is a point, however, where such motions can become an abuse of the system. In this case, all of the issues raised in the second motion could have been discovered in time to be filed with the initial motion.
[3] We note that in Conroy we stated that the period could be extended for good cause, but not after it had expired. 933 So.2d at 687.
[4] We are aware that some existing case law has reviewed similar issues under rule 3.800(b). See Yisrael v. State, 938 So.2d 546 (Fla. 4th DCA 2006) (holding a "crime and time" letter admissible where issue was preserved by motion under rule 3.800(b)).
[5] We note that although Mr. Griffin's cost judgment cited section 938.085 in reference to both a $2 and a $150 cost, the statute actually references a single "surcharge" of $151, $1 of which is retained by the court and the remainder of which funds a Rape Crisis Program Trust Fund.
[6] Given that these local county surcharges are often used to improve court facilities, it is also a little troubling to realize that the reasoning in Ridgeway might encourage state attorneys to delay criminal filings between the enactment of such a surcharge and its effective date in order to maximize revenue for the local courthouse.