959 So.2d 794 (2007)
Naki HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-2969.
District Court of Appeal of Florida, Second District.
June 22, 2007.
James Marion Moorman, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Naki Harris appeals his convictions and sentences for possession of cocaine and possession of marijuana. We affirm Mr. Harris's convictions without comment. We affirm Mr. Harris's sentences because we conclude that the trial judge's expressed surprise and disagreement with the jury's verdict prior to imposing sentence, if a preserved error, was not a harmful one.
*795 Mr. Harris was charged with possession of cocaine with intent to sell within 1000 feet of a church,[1] possession of contraband in a county detention facility,[2] possession of marijuana (more than twenty grams),[3] and resisting an officer without violence[4] for events occurring in July 2004. The jury acquitted Harris of possession of contraband in a county detention facility and resisting an officer without violence. For the two remaining offenses, it convicted Mr. Harris of the lesser-included offenses of possession of cocaine[5] and possession of marijuana (twenty grams or less).[6]
The sentencing hearing occurred immediately following the discharge of the jury. At the beginning of the sentencing hearing, the trial court pointed out that Mr. Harris had twelve prior felony convictions. The assistant state attorney observed that Mr. Harris's record included nine prior convictions for possession of cocaine, a prior conviction for sale of cocaine, and a prior conviction for sale of a counterfeit substance. He also noted that Mr. Harris was released from prison on March 6, 2004, after serving a four-year sentence for possession of cocaine, was arrested for possessing cocaine shortly thereafter, and then committed the current offenses while released on bond in the pending case. The assistant state attorney commented: "I respect the jury's verdicts[;] however, his conduct does show a certain disregard for the law." The trial judge responded that he was "still shaking [his] head" over the jury's verdict. The trial court then asked defense counsel to address the sentencing issues on Mr. Harris's behalf. Defense counsel began, "First of all, from day one Mr. Harris has never denied his guilt in terms of possession. The issue he had was the sale aspect. From day one it was  you know, he was more than willing to own up to the possession charges." The trial judge responded to this assertion:
THE COURT: So tell me what [Mr. Harris's] version of the events are, then, that indicates that he wasn't at least possessing with intent to sell.
DEFENSE COUNSEL: Judge, I don't know why the jury came back with the verdict that they came back with.
THE COURT: Oh, I'll accept that, but you tell me what the innocent version is that he is just a possessor on that date. What the version is out there on the street when he's got ten rocks. When he admits to the cop, which apparently wasn't argued in closing argument that he was out there selling. But in here I think about that. You caught a break on that one. But we didn't hear anything about his admission to the cops that he was selling out there, and they saw him selling, and he's got the additional ten rocks.
So, what was his intent out there? Please, share with me what his innocent intent was.
DEFENSE COUNSEL: Judge, I would not presume to make any comment. I was not there.
The trial court then heard from Mr. Harris, discussed the effect of the other pending case, and stated:

*796 THE COURT: Well, as we always say, or as I always say and what the law says, the purpose of sentencing in Florida is to punish people that commit crimes. He has 12 prior felonies by my count and a bunch of misdemeanors. He has these and then when he was out on bond he was committing other felonies and got arrested on those. This is not somebody, no matter what his protests today are, that is interested in changing his life.
Gus'[s] Bar is one of the worst places in the county that you could be. Standing out there and hawking cocaine on the corner is not somebody that wants to change their life or improve their life situation.
That he's got a little clearer head now after being yanked in the jail for the last ten months after he committed his new felony only reflects how good some of these folks do when they are actually institutionalized.
I adjudicate him guilty. Sixty months in the Department of Corrections on the possession of coke.
Adjudicate and time served on the misdemeanor.
On the other two counts the jury found you not guilty, I adjudge you to be not guilty on those. You may go hence without delay [sic].
Thereafter, the trial court addressed the additional pending charge of possession of cocaine and agreed to sentence Mr. Harris to a two-year term of imprisonment in that case concurrent with the sentence in this case. Mr. Harris appealed the judgments and sentences in this case but did not appeal the concurrent two-year term in the other case.
It is noteworthy that Mr. Harris's trial counsel did not expressly object to the trial court's comments or suggest that the trial court was basing its sentencing decision on improper factual determinations. During this appeal, however, Mr. Harris's appellate counsel filed a motion to correct a sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), claiming that the trial court had improperly considered facts during sentencing that were rejected by the jury and that the result was essentially a vindictive sentence. The trial court failed to rule on that motion in a timely manner, and thus the motion is deemed denied. See Fla. R.Crim. P. 3.800(b)(1)(B), (b)(2).
Initially, we question whether this issue is one that is waived when counsel fails to contemporaneously object or whether it constitutes a "sentencing error" that can be preserved by the filing of a motion pursuant to rule 3.800(b)(2). See Griffin v. State, 946 So.2d 610, 613 (Fla. 2d DCA 2007); see also Jackson v. State, 952 So.2d 613, 616 (Fla. 2d DCA 2007) (Stringer, J., specially concurring). Even if this error was not waived and is therefore preserved by the motion to correct sentence, we are convinced that any error by the trial court in making these comments did not contribute to the sentences and was, at worst, harmless error.
Mr. Harris argues that the trial court's comments establish that it considered the conduct for which the jury acquitted him in determining an appropriate sentence. Citing Doty v. State, 884 So.2d 547, 549 (Fla. 4th DCA 2004), he argues that this is a due process violation that requires resentencing. Both the Third District and the Fourth District have held that when portions of the record reflect that the trial judge may have relied upon such impermissible considerations in passing sentence, the State has the burden to show from the record those considerations "`played no part in the sentence imposed.'" Doty, 884 So.2d at 549 (quoting Epprecht v. State, 488 So.2d 129, 131 (Fla. *797 3d DCA 1986)). The State presents a very limited answer to this point without citing any case law, suggesting only that the issue is unpreserved.
We are not convinced that the trial court relied upon the conduct for which Mr. Harris was acquitted in imposing the five-year sentence for possession of cocaine. Rather, the trial court expressed surprise at the verdict, challenged Mr. Harris's direct assertion that the trial somehow vindicated his pretrial protestations of innocence, and then addressed numerous legitimate sentencing factors before pronouncing sentence. There is no question Mr. Harris's prior convictions and his quick rate of recidivism supported this sentence.
Nevertheless, we need not decide whether to adopt the tests espoused in Doty or Epprecht which would arguably require reversal if the court "may" have considered conduct for which Mr. Harris was acquitted, because we conclude that any error in this case is harmless. That is, we conclude beyond a reasonable doubt that Mr. Harris would have received this five-year sentence based upon his prior record and recidivism, regardless of the trial court's opinion of the jury's verdict in this case.
While we are inclined to agree with Judge Canady's observation in his concurrence that the analysis in Doty is questionable, especially for sentencing under the Criminal Punishment Code, the State has not asked this court to certify conflict with the Fourth District and has made none of the arguments presented in the concurrence. We are unconvinced that the trial court made any findings of fact based on a preponderance of the evidence regarding Mr. Harris's behavior when imposing this sentence. Cf. United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) (holding that when the conduct underlying the acquitted charge is proven by a preponderance of the evidence, the sentencing court does not violate due process by considering that conduct). Given our conclusion that Mr. Harris's sentence was not affected by any improper considerations, we are reluctant to embark on a full analysis of the interplay between Doty, Watts, and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), or to attempt to reconcile the Fourth District's opinions in Howard v. State, 820 So.2d 337 (Fla. 4th DCA 2002), and Evans v. State, 816 So.2d 742 (Fla. 4th DCA 2002), with its opinion in Doty. Rather, we affirm because any error is harmless beyond a reasonable doubt.
Affirmed.
SALCINES, J., Concurs.
CANADY, J., Concurs in result only.
CANADY, Judge, Concurring specially.
Although I agree that the convictions and sentences should be affirmed, I disagree with the majority's analysis of Harris's due process claim.
Unlike the majority, I would reach the merits of Harris's claim.[7] With all due respect to the majority, its conclusion that the error asserted by Harris is harmless beyond a reasonable doubt is unsupportable.
*798 "The harmless error test," as explained by the supreme court in State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986), when applied to a jury's verdict convicting a defendant, "places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." The same test is generally applicable in the context of a sentencing error raised on direct appeal. See State v. Anderson, 905 So.2d 111, 115-16 (Fla.2005); see also Williams v. State, 720 So.2d 590, 591 (Fla. 2d DCA 1998).
Here, during the sentencing proceeding, the trial court directed defense counsel to explain why Harris "wasn't at least possessing with intent to sell." The trial court then referred to facts relevant to the offense of possession with intent to sell. The trial court mentioned Harris's possession of "ten rocks," his admission to a police officer "that he was out there selling," and the officer's testimony that he observed Harris selling drugs. The trial court observed that "in here I think about that." This comment can only be understood as expressing the trial court's intention to consider in the sentencing proceeding  "in here"  the conduct of which Harris had been acquitted by the jury. There is no indication of any sort that the trial court subsequently abandoned its expressed intention to consider the acquitted conduct. The trial court went on to comment on Harris's record of prior offenses. But after doing so, the court once again referred to facts relevant to the acquitted conduct, stating the conclusion that Harris had been "hawking cocaine." Subsequently, the trial court  utilizing a Criminal Punishment Code scoresheet reflecting a lowest permissible prison sentence of 23.4 months  imposed the maximum prison sentence of 5 years.
For its conclusion that any error in considering the acquitted conduct was harmless, the majority relies on the trial court's comments on the prior offenses: "[W]e conclude beyond a reasonable doubt that Mr. Harris would have received this five-year sentence based upon his prior record and recidivism, regardless of the trial court's opinion of the jury's verdict in this case."
The trial court's comments concerning Harris's prior offenses do not provide a sufficient basis for concluding that there is "no reasonable possibility" that the trial court's consideration of the acquitted conduct "contributed to" the trial court's decision to impose the statutory maximum sentence of five years. DiGuilio, 491 So.2d at 1135. The fact that certain of the trial court's comments indicated that the sentence would be influenced by Harris's prior offenses does not erase the fact that other comments indicated that the sentence would be influenced by Harris's intent to sell. There is no basis for concluding that the trial court considered the prior offenses a wholly sufficient independent basis for imposition of the statutory maximum sentence. Based on the trial court's obvious focus on the circumstances pointing to intent to sell and its expressed intention to "think about" the acquitted conduct in the sentencing proceeding, there is at least a "reasonable possibility"  if not a probability  that the sentence was influenced by considerations which Harris asserts were improper under Doty. The majority's assertion to the contrary is implausible.
Accordingly, I conclude that it is necessary to address the merits of Harris's argument that under Doty, the trial court violated Harris's due process rights. For the reasons I explain, I conclude that Doty *799 does support Harris's claim but that Doty is inconsistent with the decision of the Supreme Court in Watts.
Doty, 884 So.2d at 549, held that "[i]t is a violation of due process for the court to rely on conduct of which the defendant has actually been acquitted when imposing a sentence." The defendant in Doty had been acquitted of sexual battery and burglary and convicted of less serious charges. In sentencing the defendant, the trial court considered the victim's testimony that "would have supported both charges" of sexual battery and burglary. 884 So.2d at 550. The Fourth District reversed because "the state has failed to show that the court did not rely on the charges of which appellant was acquitted in meting out the most severe sentences available on two of the counts." Id.[8] There is no basis for distinguishing the instant case from Doty.
Doty relied on Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), which is  as I explain below  easily distinguishable from the circumstances presented by Doty. Doty made no mention, however, of Watts, which articulated a rule that is manifestly inconsistent with the rule stated in Doty.
In Watts, the Court considered whether a sentencing court, in sentencing the defendants under the federal sentencing guidelines, could consider conduct of the defendants' underlying charges of which they had been acquitted. The Court pointed out that a jury's acquittal is not a rejection of facts; it is merely "`an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt.'" 519 U.S. at 155, 117 S.Ct. 633 (quoting United States v. Putra, 78 F.3d 1386, 1394 (9th Cir.1996) (Wallace, C.J., dissenting)). After noting that "application of the preponderance [of the evidence] standard at sentencing generally satisfies due process," Watts, 519 U.S. at 156, 117 S.Ct. 633, the Court held "that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence," id. at 157, 117 S.Ct. 633.
Here, the record is sufficient to support a conclusion by the trial court that the State proved by a preponderance of the evidence that Harris sold cocaine; the arresting officer testified that he observed Harris conduct a drug transaction and that Harris admitted selling cocaine. Therefore, under Watts the trial court did not err in considering such evidence in sentencing Harris.
Townsend, 334 U.S. at 741, 68 S.Ct. 1252, a habeas corpus proceeding, is easily distinguishable because it involved an uncounseled *800 defendant who "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." In Townsend, the sentencing court relied on both prior acquitted charges and prior dismissed charges and there was no factual basis to support the trial court's assumption that the defendant was guilty of the charged offenses. "[I]t [was] the careless or designed pronouncement of sentence on a foundation . . . extensively and materially false, which the [defendant] had no opportunity to correct by the services which counsel would provide, that render[ed] the proceedings lacking in due process." Id.
I recognize that the holding in Watts is limited by the more recent Sixth Amendment decisions in Apprendi; Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); and Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), and that any fact that increases the penalty for a crime beyond the prescribed statutory maximum (which includes the guidelines maximum in a mandatory guidelines sentencing scheme) must be submitted to the jury and proved beyond a reasonable doubt. Here, however, Harris was sentenced under the Criminal Punishment Code to a sentence within the statutory maximum. Accordingly, Apprendi and its progeny have no application. See United States v. Dorcely, 454 F.3d 366, 371 (D.C.Cir.2006) (discussing continuing vitality of Watts, holding "that a sentencing court may base a sentence on acquitted conduct without offending the defendant's Sixth Amendment right to trial by jury," and observing that "[i]n so holding, we agree with every circuit that has considered the question post-Booker"); United States v. Duncan, 400 F.3d 1297, 1304 (11th Cir.2005) (applying the Watts rule and stating that "Booker does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict"); People v. Dove, 124 Cal.App.4th 1, 21 Cal.Rptr.3d 52, 59 (2004) (citing Watts and stating that "acquittal on the charge of possession for sale did not bind the trial court" and that "because Apprendi and Blakely did not apply, the trial court was free to redetermine the personal use issue based on the preponderance of the evidence").
The decision in Doty cannot be reconciled with the holding in Watts. I would reject Harris's argument since it is based on a legal principle  as articulated in Doty  that is inconsistent with the Supreme Court's decision in Watts.[9]
NOTES
[1] § 893.13(1)(e)(1), Fla. Stat. (2004) (providing that this crime is a first-degree felony).
[2] § 951.22, Fla. Stat. (2004) (providing that this crime is a third-degree felony).
[3] § 893.13(6)(a) (providing that this crime is a third-degree felony).
[4] § 843.02 Fla. Stat. (2004) (providing that this crime is a first-degree misdemeanor).
[5] § 893.13(6)(a) (providing that this offense is a third-degree felony).
[6] § 893.13(6)(b) (providing that this offense is a first-degree misdemeanor).
[7] The majority questions  but does not decide  whether the issue raised by Harris was a claim of sentencing error subject to preservation under rule 3.800(b)(2). I would conclude that the error here was properly preserved under rule 3.800(b)(2) based on our cases treating other due process claims with respect to sentencing as claims of sentencing error within the scope of rule 3.800(b)(2). See Jackson v. State, 952 So.2d 613 (Fla. 2d DCA 2007); Harley v. State, 924 So.2d 831 (Fla. 2d DCA 2005); see also Summerlin v. State, 901 So.2d 997 (Fla. 2d DCA 2005).
[8] Two Fourth District cases appear to be inconsistent with the holding in Doty. See Evans v. State, 816 So.2d 742, 744-45 (Fla. 4th DCA 2002) (holding that trial court could consider fact that defendant carried or possessed firearm even though he had been "acquitted of the firearm component of each of the offenses"); Howard v. State, 820 So.2d 337, 340-41 (Fla. 4th DCA 2002) (holding that trial court could consider evidence of the substantial amount of cocaine possessed by defendant even though he had been tried for trafficking cocaine but had been found guilty of the lesser-included offense of possession of cocaine).

In Pavlac v. State, 944 So.2d 1064 (Fla. 4th DCA 2006), the Fourth District, relying on Doty, reversed a sentence because the trial court had made reference at the sentencing proceeding to the defendant's violent behavior in spite of the fact that the defendant had been acquitted of resisting arrest with violence and was convicted of resisting arrest without violence. Because the Pavlac opinion does not reflect whether evidence of the defendant's violence was presented to the trial court, it is not clear whether the requirements of Watts were satisfied.
[9] Harris also relies on Epprecht v. State, 488 So.2d 129, 131 (Fla. 3d DCA 1986), which held "it is fundamental that the due process clause prohibits a court from considering charges of which an accused has been acquitted in passing sentence." Epprecht is distinguishable from this case and Watts because the evidence relied upon by the trial court in Epprecht was not proved at trial and did not relate to the underlying charges.