966 So.2d 441 (2007)
Diana NUSSPICKEL, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-5956.
District Court of Appeal of Florida, Second District.
September 28, 2007.
*442 James Marion Moorman, Public Defender, and Jack W. Shaw, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Diana Nusspickel challenges her convictions and sentences for seven counts of misdemeanor battery arising from her operation of a motor vehicle. We affirm but write to explain our decision with respect to Nusspickel's argument that the trial court may have relied upon improper considerations in sentencing her. As to Nusspickel's other arguments, we affirm without discussion.
On January 24, 2003, Nusspickel struck several individuals while operating a motor vehicle in a parking lot at Fossil Park in St. Petersburg. The State charged her with eight counts of aggravated battery but dropped one count on the day of trial.[1]
The testimony at trial consisted of widely divergent explanations of the incident. The State contended that Nusspickel intentionally struck and injured the victims with the vehicle. Nusspickel did not dispute that she was the driver, that the vehicle struck the victims, or that some of the victims were injured. However, she denied that she intentionally struck the victims. She claimed that the victims had threatened her and a friend, that the victims refused to move from behind the parked vehicle, and that she accidentally struck the victims when she attempted to leave the park.
At the conclusion of the evidence, the trial court instructed the jury on the elements of aggravated battery and the lesser-included offenses of misdemeanor battery and reckless driving. The court also instructed the jury as to self-defense. The jury returned a verdict finding Nusspickel guilty of seven counts of misdemeanor battery.
A number of individuals testified at the sentencing hearing concerning the incident and the injuries that resulted from the incident. One victim's mother testified that after the incident, she took her son to get a restraining order against Nusspickel "because she's coming around, circling my home with her friends and her brother, putting their hands out the car window, making gun gestures at him, stating that she was coming back for him."
Just prior to imposing sentence, the judge commented that it appeared to him *443 that the jury granted a pardon to Nusspickel by returning a verdict for the lesser offenses of misdemeanor battery. The judge observed that if Nusspickel had been convicted of the aggravated batteries as charged, the sentencing guidelines would call for a sentence of at least seventeen years in state prison. The judge added that he was not sure that a seventeen-year sentence, or any sentence, would satisfy the victims.
The judge also commented that
I just can't imagine, I just can't imagine, after causing the kind of injury, that you wouldalmost killing someone that you would not just do everything you could to avoid having any contact with that individual or to do anything of that sort. It just distresses me greatly to think that that would occur.
Defense counsel interjected, disputing that any other incidents had occurred. Counsel noted that there had been a hearing before another judge on a motion to increase Nusspickel's bond and that "there's a lot of emotion and back and forth between these folks. So I would ask the Court not to assume that that did, in fact, happen as part of your decision making process." The judge stated, "All right," and proceeded to sentence Nusspickel on the seven battery convictions to four consecutive one-year jail terms followed by three consecutive one-year probation terms, with no early termination of probation.[2]
Nusspickel filed a motion to correct sentencing errors, alleging, among other things, that the judge's comments reflect that in imposing sentence, the judge violated her due process rights. Nusspickel argued that the judge improperly considered the aggravated battery charges of which she had been acquitted and the purported misconduct of driving by and taunting a victim. In the order denying the motion the judge explained his earlier comments and his reasons for the sentences that he imposed, as follows:
The evidence at trial and the verdict of the jury supported the State's allegation that the Defendant intentionally ran down seven fellow teenagers with an automobile in the parking lot of a city recreation center. Two of the seven victims of the Defendant's conduct incurred very serious injuries.
. . . .
. . . The facts concerning the striking of the victims or the extent of their injuries were not contested during the trial, nor were they challenged at the sentencing hearing. In fact, during the sentencing hearing defendant's counsel and the Defendant herself conceded that victims Hodge and Bailey suffered serious bodily injury as a result of her criminal behavior.
. . . .
. . . In pronouncing the sentence and admonishing the Defendant regarding the actions for which she had been convicted, this court stated the obvious that the Defendant's conviction for battery with an automobile in the face of conceded and uncontested evidence of serious bodily injury to two of the victims constituted a jury pardon. These statements were not to justify the sentence that the court had chosen to impose, but to emphasize to the Defendant how fortunate she had been to avoid felony convictions for seven counts of aggravated battery which carried a potential maximum sentence of one hundred and five (105) years in state prison *444 and for which the minimum guideline sentence was seventeen (17) years. The court's statements regarding the jury pardon were also made in order to acknowledge to the victims and their families the frustration and bewilderment that they were experiencing with a legal system that they had turned to for justice in this case.
. . . .
. . . The fact that the jury chose to grant a jury pardon does not preclude this court from considering serious harm as a factor in determining an appropriate sentence. The recognition of the existence of a jury pardon in this case is irrelevant to the issue of sentencing for the Defendant's misdemeanor offenses. Conviction for a lesser included offense necessarily requires a sentence within the statutory range for that level of offense. However, in determining that sentence the court is not precluded from considering the existence of serious injury merely because such injury also constitutes an element of a greater offense for which the Defendant was not convicted. In this case, the sentence imposed was not a function of a belief that the Defendant was guilty of aggravated battery.
Nusspickel argues that the judge's statements reflect that he may have improperly taken into account (1) his expressed belief that Nusspickel was guilty of the aggravated battery charges even though the jury convicted her on each charge of the lesser-included offense of simple battery and (2) misconduct that had not been charged and proved relating to her alleged contact with one of the victims after the charged incidents. She also asserts that the State cannot carry its burden to show that the judge did not rely on these impermissible considerations.
Generally, the trial court's imposition of a sentence that is within the minimum and maximum limits set by the legislature "is a matter for the trial Court in the exercise of its discretion, which cannot be inquired into upon the appellate level." Shellman v. State, 222 So.2d 789, 790 (Fla. 2d DCA 1969); see also Booker v. State, 514 So.2d 1079, 1082 (Fla.1987) (recognizing that "this Court and the United States Supreme Court have embraced the notion that so long as the sentence imposed is within the maximum limit set by the legislature, an appellate court is without power to review the sentence"); Darby v. State, 216 So.2d 29, 30 (Fla. 3d DCA 1968) ("An appellate court of this state will not disturb a sentence which is within the limit set by statute."). In Fraley v. State, 426 So.2d 983, 985 (Fla. 3d DCA 1983), the Third District stated the following:
Most assuredly, under the laws of this state a trial judge has considerable discretion as to what sentence to impose and where the sentence is within statutory minimums or maximums appellate review will be limited to determining whether the process used by the judge in arriving at a sentence was fair, particularly whether the factors taken into consideration were relevant and reliable.
Nusspickel cites to several cases that discuss an exception to the general rule, including Epprecht v. State, 488 So.2d 129 (Fla. 3d DCA 1986), and its progeny, Doty v. State, 884 So.2d 547 (Fla. 4th DCA 2004), Seays v. State, 789 So.2d 1209 (Fla. 4th DCA 2001), and Cook v. State, 647 So.2d 1066 (Fla. 3d DCA 1994). In Epprecht, the Third District held "that the due process clause prohibits a court from considering charges of which an accused has been acquitted in passing sentence." 488 So.2d at 131. If portions of the record reflect that the trial court may have relied upon impermissible considerations in imposing *445 sentence, the State bears the burden to show from the record as a whole that the trial court did not rely on such impermissible considerations. Id. at 130. Further, unsubstantiated allegations of misconduct or speculation that the defendant probably committed other crimes may not be relied upon by a trial court in imposing sentence. See Doty, 884 So.2d at 550; Reese v. State, 639 So.2d 1067, 1068 (Fla. 4th DCA 1994); Epprecht, 488 So.2d at 131.
In Howard v. State, 820 So.2d 337, 340 (Fla. 4th DCA 2002), the court stated that the exception to the general rule is "where the facts establish a violation of a specific constitutional right during sentencing." The court noted, however, that a sentencing court may consider all relevant factors when imposing sentence and need not "turn a blind eye" to uncontradicted evidence that was before the court. Id. In Dowling v. State, 829 So.2d 368, 371 (Fla. 4th DCA 2002), the court affirmed a sentence even though the prosecutor used the sentencing hearing to tell the trial court about alleged criminal conduct that the state admitted it could not prove beyond a reasonable doubt. Dowling reiterated that "it is not a violation of a defendant's constitutional rights to consider other relevant factors when determining an appropriate sentence." Id. (citing Roberts v. United States, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The court noted that defense counsel did not object to the testimony from various witnesses at the sentencing hearing, he cross-examined those witnesses extensively, and "the defendant was given a full opportunity to explain his position and call his own witnesses." Id.
Recently, this court considered a defendant's due process challenge to his sentences. In Harris v. State, 959 So.2d 794, 796 (Fla. 2d DCA 2007), the defendant, relying on Doty, argued that the trial court violated his due process rights during sentencing by considering conduct for which the jury had acquitted him. The majority determined that any error was harmless but also noted that it was "not convinced that the trial court relied upon the conduct for which Mr. Harris was acquitted in imposing the five-year sentence." Id. at 797.
In a concurring opinion, Judge Canady agreed with the majority decision to affirm but disagreed that the claimed error was harmless. He asserted that the majority should have reached the merits of the due process claim. Id. at 797-99. Judge Canady observed that under United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997), a jury acquittal is not a rejection of facts but is an acknowledgement that the prosecution did not prove an essential element of the offense beyond a reasonable doubt. Harris, 959 So.2d at 799. He pointed out that Watts held "`that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as the conduct has been proved by a preponderance of the evidence.'" Id. (quoting Watts, 519 U.S. at 157, 117 S.Ct. 633).
Judge Canady acknowledged that the holding in Watts has been limited by more recent Sixth Amendment decisions in the context of sentences that increase the penalty for a crime beyond the statutory maximum. Harris, 959 So.2d at 800 (citing Cunningham v. California, ___ U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007); United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). However, *446 because Harris had been sentenced within the sentencing guidelines, Judge Canady determined that Apprendi and its progeny were not controlling. He stated that Harris was not entitled to relief on his due process claim because his argument "is based on a legal principleas articulated in Dotythat is inconsistent with the Supreme Court's decision in Watts." Harris, 959 So.2d at 800.
The majority in Harris commented that it was "inclined to agree with Judge Canady's observation in his concurrence that the analysis in Doty is questionable." Id. at 797. But because the majority concluded that any error was harmless, it declined to engage in a full analysis of the interplay between Doty, Watts, and Apprendi or to attempt to reconcile Doty with other opinions issued by the Fourth District. Id.
Here, during sentencing, the trial judge commented as to his belief that the jury gave Nusspickel a pardon by convicting her of lesser charges. The judge emphasized his concern about the seriousness of the incident and the punishment that Nusspickel would have faced had she been convicted of the more serious charges. When the judge briefly mentioned Nusspickel's alleged contact with one of the victims after the incident, defense counsel immediately advised the judge that the defense maintained that the contact did not occur. The judge responded "[a]ll right" and made no further mention of that contact. The judge then imposed sentence, which was less than the maximum sentence that could have been imposed.
When the trial judge later considered Nusspickel's motion to correct sentencing errors, he gave a detailed explanation of his sentencing decision. The judge noted that much of the evidence concerning the striking of the victims and the extent of their injuries was not contested during trial or at sentencing; that Nusspickel asserted self-defense at trial, which the jury rejected; and that the jury had been instructed regarding another lesser-included offense, reckless driving, but had convicted Nusspickel of battery on every count. The judge added that the State and the defense conceded at sentencing that the court could impose a maximum sentence of one year in the county jail for each count and that the sentences could be imposed consecutively. The judge also noted that the State, the victims, and the victims' family members all requested the maximum sentence of seven years in jail.
The judge stated that his comments regarding a jury pardon were not made to justify the sentences but were made to emphasize to Nusspickel that she was fortunate to avoid felony convictions and the resulting exposure to a maximum sentence of 105 years in state prison and a minimum guidelines sentence of 17 years. The judge added that his comments were made to acknowledge the frustration and bewilderment of the victims and their families concerning the legal system.
After considering the trial judge's comments in the context of the record as a whole, including the detailed explanation given in the order denying the motion to correct sentencing errors, we cannot agree with Nusspickel that in imposing the sentences the trial judge relied upon impermissible considerations. Each of the cases on which she relies involves specific circumstances that had to be reviewed by the appellate court in light of the record of the case. Unlike those cases, our record includes the judge's own explanation as to his intent in making the complained-of comments. There is nothing in our record suggesting that the judge was not candid and sincere in his explanation.
Thus, the record does not support Nusspickel's contention that reversal is required under Epprecht and its progeny. *447 Although Nusspickel's sentences are significant, they are less than the maximum that the judge could have imposed. Further, the record demonstrates that the sentencing process was fair and that the factors considered by the trial court in imposing the sentences were relevant and reliable. See Fraley, 426 So.2d at 985.[3] Accordingly, we affirm Nusspickel's convictions and sentences.
Affirmed.
LaROSE, J., and BRODIE, LAUREN L., Associate Judge, Concur.
NOTES
[1] Nusspickel was also charged with and pleaded guilty to DUI. That charge also arose from the incident on January 24, 2003.
[2] Absent a prior battery conviction, the crime of battery is a first-degree misdemeanor punishable "by a definite term of imprisonment not exceeding 1 year." §§ 775.082(4)(a), 784.03(1)(b), Fla. Stat. (2002).
[3] Because of our conclusion that the record does not support Nusspickel's claim that the trial judge relied on improper considerations in imposing the sentences, we need not address the interplay between the Supreme Court's decision in Watts and the Epprecht line of cases relied on by Nusspickel. We also note that the parties did not discuss Watts in their briefs or at oral argument and that our decision in Harris was published after the filing of the briefs and the presentation of oral argument in this case.