DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SANJAY JOHNSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-2802

[April 15, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin Samuel Fein, Judge; L.T. Case No. 17007053CF10A.

Daniel Eisinger, Public Defender, and Timothy Wang, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Sorraya M. Solages-Jones, Senior Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals his convictions and sentences for second-degree murder and child abuse without great harm. On appeal, appellant argues that the trial court erred by: (1) allowing the state to introduce evidence of a baseball bat that was allegedly insufficiently connected to the crime, (2) sentencing appellant based on uncharged conduct, (3) denying appellant's motion to correct a written restitution order which did not comport with the trial court's oral pronouncement, (4) utilizing a "random sequence" jury selection process, (5) having a six-person jury rather than a twelve-person jury, and (6) denying appellant's request for jury instructions of several lesser-included offenses.[1] Appellant claims that he should get a

---

[1] Appellant concedes that the fourth issue was previously decided by this court in *Paul v. State*, 407 So. 3d 468 (Fla. 4th DCA 2025), *rev. granted*, No. SC2025-0478, 2025 WL 1672365 (Fla. June 13, 2025). Appellant also concedes that the fifth issue was previously decided by this court in *Guzman v. State*, 350 So. 3d 72, 73 (Fla. 4th DCA 2022), *rev. denied*, No. SC2022-1597, 2023 WL 3830251

new trial.  We think otherwise.  As such, we affirm on all issues raised, and we remand only to correct a scrivener's error in appellant's written restitution order.

Appellant was charged with second-degree murder following the death of the victim, appellant's wife.  The state alleged that appellant beat the victim with a baseball bat until she bled out internally.  Appellant was also charged with child abuse without great bodily harm, based on the state's allegation that the six-year-old son of appellant and the victim saw appellant hitting the victim with the baseball bat.

Appellant filed a motion in limine requesting that the trial court exclude any testimony regarding a baseball bat found at appellant and the victim's residence.  Appellant argued that the baseball bat was insufficiently linked to the charged crime.  The trial court disagreed and denied appellant's motion.

Police testified at the trial that they responded to appellant and the victim's residence, following a 911 call in the early morning hours of June 16, 2017.  They found the victim unresponsive in the bedroom shared by appellant, the victim, and their child.  Appellant was performing CPR on the victim.  The bedroom was in disarray, and there appeared to be blood stains around the room.  An officer noticed the child asleep in the room and carried him outside the bedroom to another officer.

Appellant told law enforcement that the victim was in the bathtub while they were having a conversation about their future.  Appellant said the victim told him that she fell and hit her head, but as he was drowsy, he did not see the victim fall.  Appellant helped the victim out of the bathroom into their bedroom and tried to help control the bleeding.  Appellant then awoke their roommate, who lived in the other bedroom, for help.  Appellant admitted that he and the victim were arguing but claimed that the argument had not turned physical.

Multiple witnesses, including the medical examiner, testified that there were visible injuries on the victim, such as lacerations, contusions, bruising, and discoloration.  The medical examiner testified that the victim's injuries were "consistent with being caused by a cylindric object." The medical examiner determined that the manner of the victim's death was homicide, and the cause of the victim's death was "blunt force

---

(Fla. June 6, 2023), *cert. denied*, 144 S. Ct. 2595 (2024).  We find the sixth issue to be without merit.  As such, we affirm these three issues without further comment.

injuries." The medical examiner further testified that the victim "had a lot of injuries. All of them together caused her death." The emergency doctor, who attempted to treat the victim when she arrived at the hospital, also testified that the victim's injuries were not consistent with a fall or a car crash.

One of the detectives made contact with the child who volunteered information relating to a baseball bat. Another detective located a black and blue baseball bat behind a television in the family's bedroom. This detective also recovered surveillance footage and a receipt indicating that appellant had purchased a bat on June 6, 2017, ten days before the victim's death.

The child, who was appellant and the victim's son, also testified at trial. The child, who was six years old at the time of the incident, was twelve at the time of the trial. He heard appellant and the victim "yelling and screaming." The child said he saw appellant hit the victim with a black and blue baseball bat. The child did not know how many times appellant hit the victim with the bat, or where appellant hit the victim. He said his memory of appellant hitting the victim with a bat "wasn't a dream" because there was "blood on [his] shirt."

The child was shown the bat recovered from the bedroom. He said it "kind of looks like" the bat appellant was using to hit the victim. The child remembered the bat being bigger, but he was six years old and smaller at the time of the incident.

According to the roommate, appellant believed that the victim was cheating on him. The day before the incident occurred, appellant called the roommate to express his concerns that the victim was seeing other men. Later that evening, after the victim had returned home, the roommate heard a "commotion," and it sounded like appellant and the victim were arguing. After the roommate had fallen asleep that night, she was awoken by appellant pounding on her door asking for help. The roommate followed appellant to his bedroom and saw the victim on the floor not breathing. The roommate called 911. Later, while executing a search warrant for the apartment, the detective found a note allegedly written by the victim, in a pile of clothes, in which the victim admitted to adultery.

The jury found appellant guilty of second-degree murder and child abuse as charged in the information. At the sentencing hearing, the trial court stated that it was "making this determination based only, only, on the criminal history of the [appellant], the facts of the case as I heard in

the trial, [and] the victims' statements and feelings in that regard, which I read in the PSI, as well as what has been presented here today, as well as any and all mitigation that has been presented on behalf of [appellant]." The trial court continued:

> So, again, only relying on the four criteria that I already articulated, the criminal history of the Defendant, the facts of the case, the victims' statements or feelings, and then all mitigation. The underlying facts of this case that I heard at the trial are egregious, egregious. The State is the prosecuting authority, they make these decisions, I'm just the referee, but what I heard and what I saw was premeditation in the form of purchasing this baseball bat at some period of time ahead of time, and then either a heightened level of premeditation that would be cold and calculated or heinous, atrocious and cruel based on what happened to the victim in this case, or both, and then we might be sitting here in a whole different proceeding, but the State didn't elect to go that route, so I'm not considering it as a first degree murder case, but that was certainly the evidence that I heard. The injuries that the victim suffered in this case, the cause of death specifically, it's a new one on me, and I have been in this business a long time, to have such internal injuries that it causes you to bleed internally to the point where you lose so much volume of blood that you lose your life, I couldn't find facts more egregious.

Appellant was sentenced to life in prison on the second-degree murder count, and five years in prison on the child abuse count, with the sentences to run concurrently. Appellant was also ordered to pay $7,500 in restitution to the Crime Victims Compensation Fund. The written restitution order stated that the trial court "retain[ed] jurisdiction to modify restitution in this case." Appellant filed a motion to correct sentencing error, arguing that the written restitution order conflicted with the trial court's oral pronouncement, because the trial court did not orally pronounce that it would retain jurisdiction to modify restitution. The state, at that time, conceded that the restitution order should be corrected. The trial court did not rule on appellant's motion within 60 days, so it was deemed denied. *See* Fla. R. Crim. P. 3.800(b)(2)(B) ("[I]f the trial court does not file an order ruling on the motion within 60 days, the motion shall be deemed denied."). This appeal follows.

4

<u>Issue 1 – Sufficiency of the Connection Between
the Baseball Bat and the Alleged Crime</u>

Appellant argues that the trial court erred by allowing the state to introduce evidence of the baseball bat, because the state failed to establish a sufficient nexus between the bat and the crime charged. "The standard of review for the admissibility of evidence is abuse of discretion, limited by the rules of evidence." *Bartholomew v. State,* 101 So. 3d 888, 891 (Fla. 4th DCA 2012).

"It is well-settled that in order for evidence of a [weapon] to be admissible as relevant in a criminal trial, the state must show a sufficient link between the weapon and the crime." *Metayer v. State,* 89 So. 3d 1003, 1007 (Fla. 4th DCA 2012). "Conversely, when the nexus between the weapon or ammunition and the crime is too tenuous, such evidence is generally not relevant." *Holloway v. State,* 114 So. 3d 296, 297 (Fla. 4th DCA 2013). "In determining whether a sufficient nexus exists, the trial court can consider testimony identifying distinct similarities between the weapon used in the crime and the weapon proffered at trial. Likewise, the lapse of time between the crime and the discovery of the proffered evidence may be a considerable factor for the court." *Gartner v. State,* 118 So. 3d 273, 276 (Fla. 5th DCA 2013) (citation omitted). "A sufficient nexus does not, however, require testimony that the proffered weapon is definitively the weapon that was used during the crime." *Id.*

The state established a sufficient nexus between the baseball bat and the crime charged to allow introduction of the bat and the corresponding testimony. The child's testimony that appellant was using a black and blue bat to hit the victim established "distinct similarities between the weapon used in the crime and the weapon proffered at trial." *Id.* The medical examiner's testimony that the victim's injuries were "consistent with being caused by a cylindric object," also provided "distinct similarities" between the bat and the victim's injuries. The court could also consider the fact that the bat was located soon after the crime had been committed. *See id.* Further, the bat was found in close proximity to the victim in the bedroom, and appellant had purchased a bat ten days before, within temporal proximity, to the incident. These factors, taken together, established more than a sufficient link between the bat and the crime charged for the bat to be admitted into evidence.

Appellant relies on *Metayer. Metayer* involved a "triple shooting" with three victims and a codefendant. 89 So. 3d at 1004-05. One of the surviving victims testified that there were two guns at the scene. *Id.* at 1008. It was conclusively established that the codefendant's .40 caliber

gun and the decedent's .45 caliber gun were used in the crime. *Id.* at 1005-06. Metayer was arrested at his mother's home six months after the incident. *Id.* at 1006. At the time of Metayer's arrest, police found a .40 caliber gun and two .45 caliber magazines in the house, which were admitted into evidence over Metayer's objection that the items were not linked to the crime. *Id.* The prosecutor argued that there was the possibility of a third weapon at the scene. *Id.* at 1008. The only evidence linking Metayer's .40 caliber gun to the crime was a firearm expert's testimony that projectiles recovered from the surviving victim "could have been fired from any .40 caliber weapon." *Id.* at 1006, 1008. This court held that "the state failed to show a sufficient link between the shootings and the firearm and ammunition found in [Metayer's] mother's home." *Id.* at 1007.

*Metayer* is clearly distinguishable. That is because: (1) evidence in *Metayer* established that the other two weapons were used in commission of the crime, (2) Metayer's gun was not recovered by police until six months after the incident, and (3) there was no eyewitness testimony as to any distinct characteristics on Metayer's gun. The fact that the projectiles recovered from the surviving victim's person could have been fired from any .40 caliber weapon did not sufficiently link Metayer's gun to the crime. Thus, *Metayer* differs from the instant case, since here there was no testimony of other weapons used, the bat was recovered immediately after the incident and was located in the same room as the victim, and the child testified that appellant beat the victim with a bat with the same colors as the bat recovered. Other testimony that linked a bat being used as the weapon included the medical examiner's testimony that the victim's injuries were consistent with being caused by a cylindrical object.

We find the present case to be more similar to *Holloway* and *Gartner*. In *Holloway*, the trial court allowed the state to introduce evidence that a half box of .32 caliber bullets was found in the defendant's home. 114 So. 3d at 296. This court held that the state established an "adequate nexus" between the bullets and the crime to establish relevancy because the bullets were of the same caliber as those used to kill the victim, the bullets were for a revolver or a pistol and "evidence established that the murder weapon was most likely a revolver," and further the bullets were found on the day of the murder. *Id.* at 297.

In *Gartner*, the court found a sufficient nexus between the weapon displayed during a robbery and a BB gun found in the defendant's vehicle, where the victim testified that she recognized the grips and shape of the handles of the pistol, and the BB gun was seized from the defendant's vehicle only two days after the robbery. 118 So. 3d at 276-77. Like in

6

*Gartner,* here, the child recognized the colors of the black and blue bat alleged to have been used in the crime and recovered the same day.

In both *Holloway* and *Gartner,* even though the weapon was not definitively determined to be the same weapon used in the commission of the crime, there was still sufficient evidence for the jury to properly infer that the weapon could have been used in the crime. Just like those cases, in the present instance, even though there was no evidence definitively determining that the bat was the weapon, the nexus linking the bat to the crime was certainly sufficient for its admission into evidence.

Appellant's arguments on appeal go to the weight to be afforded to the bat rather than its admissibility. *Id.* at 276 ("[I]f it is inconclusive that the proffered weapon is the weapon used during the crime but a sufficient nexus exists, it is the jury's province to determine the credibility and weight of the evidence."). For example, while the medical examiner could not "say with any more specificity" what the cylindrical object was, any uncertainty as to the object went to the weight of the evidence, not its admissibility. Appellant did in fact attack the weight of the bat as evidence, for example by pointing out that swabs of the bat were not tested for DNA.

The bat was clearly admissible in the instant case, as the state established a sufficient nexus between the bat and the crime charged.

Issue 2 – Sentencing

Appellant argues that the trial court improperly based the sentence upon its belief that appellant committed premeditated first-degree murder. Appellant concedes that he did not object to the trial court's statements at sentencing. "However, 'a trial court's consideration of a constitutionally impermissible sentencing factor is a fundamental error in the sentencing process' reviewable for the first time on direct appeal." *Landis v. State,* 404 So. 3d 405, 411 (Fla. 4th DCA 2024) (citation omitted).

"[W]hen a trial court relies on impermissible factors in sentencing a defendant, the court violates the defendant's due process rights." *Charles v. State,* 204 So. 3d 63, 66 (Fla. 4th DCA 2016). "[U]nsubstantiated allegations of misconduct or speculation that the defendant probably committed other crimes may not be relied upon by a trial court in imposing sentence." *Nusspickel v. State,* 966 So. 2d 441, 445 (Fla. 2d DCA 2007).

It is abundantly clear that the trial court did not rely upon uncharged conduct in sentencing appellant. The trial court articulated the four

criteria it was relying upon in sentencing appellant.  That included: (1) appellant's "criminal history," (2) "the facts of the case," (3) "the victims' statements and feelings," and (4) "all mitigation" evidence.  "The trial court is permitted to consider the circumstances surrounding the crimes for which appellant was being sentenced."  *Landis,* 404 So. 3d at 411; *Alhasani v. State,* 397 So. 3d 814, 817 (Fla. 2d DCA 2024) ("Trial courts are permitted 'to consider the circumstances surrounding the primary offense . . . .'") (citation omitted).  The trial court gave no indication that it relied on impermissible factors when sentencing appellant.  The trial court merely noted that the facts of the case indicated that appellant may have premeditated the crime.  It noted that appellant had just purchased the baseball bat, that the victim died of internal injuries due to loss of blood, and that the facts were "egregious."  Still, there is no indication that the trial court sentenced appellant as if he was charged with first-degree murder.

Where the trial court gives no indication that it relied on impermissible factors, affirmance of a sentence is warranted.  *See State v. Garcia,* 346 So. 3d 581, 586 (Fla. 2022); *see also Serrano v. State,* 279 So. 3d 296, 302 (Fla. 1st DCA 2019) ("[T]here must be some indication that the court based its sentence on an impermissible factor before this Court will reverse.").  Instead, "we can rely on the trial court to adhere to proper sentencing factors and to not consider improper information when meting out a sentence."  *Landis,* 404 So. 3d at 412.  "[T]rial judges are routinely made aware of information which may not be properly considered in determining a cause.  Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence."  *Harvard v. State,* 414 So. 2d 1032, 1034 (Fla. 1982).  That is true in this case.

The trial court's belief that appellant potentially could have been charged with first-degree murder is more akin to comments made at sentencing in *Nusspickel.*  During sentencing in *Nusspickel,* the trial judge "commented as to his belief that the jury gave Nusspickel a pardon by convicting her of lesser charges.  The judge emphasized his concern about the seriousness of the incident and the punishment that Nusspickel would have faced had she been convicted of the more serious charges."  966 So. 2d at 446.  The trial judge later explained that "his comments regarding a jury pardon were not made to justify the sentences but were made to emphasize to Nusspickel that she was fortunate to avoid felony convictions and the resulting exposure to a maximum sentence of 105 years in state prison and a minimum guidelines sentence of 17 years."  *Id.*  The Second District found that the trial judge did not rely on impermissible

considerations, holding that the record "include[d] the judge's own explanation as to his intent in making the complained-of comments." *Id.*

Similarly, here, even though the trial court expressed its concern about the serious nature of the offense and that appellant could have potentially been charged with first-degree murder, ultimately, the trial court indicated that it knew obviously appellant was not charged with first-degree murder, and that it was relying only on four permissible criteria in deciding appellant's sentence. Thus, we find no error in appellant's sentencing.

## Issue 3 – Restitution Order

Finally, appellant correctly argues that his written restitution order must be corrected to comport with the trial court's oral pronouncement. "Because a motion to correct a sentencing error involves a pure issue of law, our standard of review is de novo." *Brooks v. State,* 199 So. 3d 974, 976 (Fla. 4th DCA 2016) (citation omitted). As conceded by the state, the trial court did not orally pronounce that it would retain jurisdiction to modify the restitution order. However, the written sentencing order states that the trial court "retains jurisdiction to modify restitution in this case."

"[W]hen there is a discrepancy between the written sentence and 'the oral pronouncement, the oral pronouncement prevails.'" *State v. Akins,* 69 So. 3d 261, 269 (Fla. 2011) (citation omitted). Restitution orders are subject to this rule of oral pronouncement. *See Trueblood v. State,* 635 So. 2d 1024, 1025 (Fla. 1st DCA 1994) (reversing restitution order not orally pronounced at sentencing). This additional provision in the written restitution order, retaining indefinite jurisdiction to modify restitution, thus represents a scrivener's error that must be deleted. *See Blair v. State,* 336 So. 3d 304, 307-08 (Fla. 4th DCA 2022).

In summary, we affirm and remand for the trial court to correct only the solitary scrivener's error in appellant's written restitution order. As such, appellant does not need to be present for this ministerial correction. *Stephenson v. State,* 368 So. 3d 5, 6 (Fla. 4th DCA 2023).

*Affirmed and remanded with instructions.*

FORST and SHEPHERD, JJ., concur.

\*          \*          \*

**Not final until disposition of timely-filed motion for rehearing.**

9