IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DESMOND T. KENNER,

          Appellant,

 v.                                 Case No.  5D16-1192

STATE OF FLORIDA,

          Appellee.

_____/

Opinion filed December 16, 2016

Appeal from the Circuit Court
for Orange County,
Renee A. Roche, Judge.

James S. Purdy, Public Defender, and Noel
A. Pelella, Assistant Public Defender,
Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Robin A. Compton,
Assistant Attorney General, Daytona
Beach, for Appellee.

EDWARDS, J.

A sentence cannot stand if it is or appears to be based in part on a defendant's

decision to maintain his innocence even after being found guilty.  Desmond Kenner

("Appellant") appeals a conviction of second-degree murder with a firearm following his

second jury trial on the same charges.  His first conviction was reversed because of an

improper jury instruction.  *Kenner v. State*, 48 So. 3d 117 (Fla. 5th DCA 2010).  In the

present appeal, Appellant raises four issues.  We affirm his conviction and specifically

affirm the denial of Appellant's motion for judgment of acquittal, the admission of the victim's dying declaration that Appellant shot him, and the exclusion of copies of the victim's felony judgments from the evidence. However, for the reasons discussed below we are compelled to reverse for resentencing before a different judge.

In March 2008, Appellant and Charles Coleman had an altercation that resulted in both of them being shot. Appellant told two different people that he was going to retaliate against Coleman. Natalin Collier testified that on the night of Coleman's death, Appellant said he was "going to handle it in the streets" without getting the police involved, referring to the previous dispute and shooting involving Coleman. Another witness, Jessica Brown, similarly testified that Appellant told her that he was going to "get" Coleman. In the early morning hours of June 25, 2008, Coleman arrived at his parents' home after being shot. His mother testified that Coleman said, "He got me. He got me, Mom. He got me this time." As he lay bleeding on the floor, Coleman told his family he knew he was dying, that he loved them, and repeated that Appellant shot him. Coleman's father testified that he heard Coleman say, "Roo Roo [Appellant's nickname] shot me again." Coleman died from the gunshot wounds.

Other than the victim's dying declaration, there was no eyewitness testimony regarding the shooting. There was also no DNA evidence connecting Appellant to the shooting, and the murder weapon was never located. Appellant's recorded phone calls from jail confirmed his former girlfriend's testimony that he asked her to lie in order to provide him an alibi for the time of the shooting. The medical examiner testified that the fatal bullet could have been fired from a distance ranging from a few feet to one mile. Appellant's motions for directed verdict were denied.

2

Based on the evidence presented at his second trial, the jury convicted Appellant of second-degree murder with a firearm. The jury's verdict included a special finding that Appellant actually possessed and discharged a firearm resulting in death. The judge presiding over Appellant's second trial adjudicated Appellant guilty of second-degree murder and sentenced him to life in prison with a minimum mandatory term of twenty-five years. His first jury trial and conviction for second-degree murder, before a different judge, resulted in a thirty year prison sentence.

SUFFICIENCY OF EVIDENCE

Second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual." § 782.04(2), Fla. Stat. (2008). An act is considered "imminently dangerous to another and evincing a depraved mind regardless of human life" when it is an act that: "(1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another, and (2) is done from ill will, hatred, spite or an evil intent, and (3) is of such a nature that the act itself indicates an indifference to human life." *Duckett v. State*, 686 So. 2d 662, 663 (Fla. 2d DCA 1996). The intent required for second-degree murder may be "inferred from the circumstances." *Perez v. State*, 187 So. 3d 1279, 1282 (Fla. 1st DCA 2016) (citing *Antoine v. State*, 138 So. 3d 1064, 1074 (Fla. 4th DCA 2014)).

Appellant first argues that the trial court erred in denying his motions for judgment of acquittal, asserting that there was insufficient evidence. We disagree. The victim's dying declaration identified Appellant as the shooter. The testimony of Collier and Brown,

3

discussed above, provided adequate proof of the requisite ill will, hatred, spite, or evil intent that Appellant harbored, which led Appellant to shoot Coleman. "All facts introduced into evidence are admitted by the defendant, and the court must draw every conclusion favorable to the state. The motion [for judgment of acquittal] should not be granted unless there is no legally sufficient evidence on which to base a verdict of guilty." *Jackson v. State*, 419 So. 2d 394, 397 (Fla. 4th DCA 1982) (citations omitted). We affirm the denial of Appellant's motion for judgment of acquittal.

## MOTION FOR MISTRIAL

Appellant argues that the trial court erred in denying his motion for mistrial after a State witness, Coleman's father, repeated his son's dying declaration in a way that implied that Appellant shot the victim on a previous occasion. "A trial court's ruling on a motion for mistrial is subject to an abuse of discretion standard of review." *England v. State*, 940 So. 2d 389, 402 (Fla. 2006) (citation omitted). "A motion for mistrial should only be granted where an error is so prejudicial as to vitiate the entire trial." *Id.* at 401-02 (citing *Snipes v. State*, 733 So. 2d 1000, 1005 (Fla. 1999)).

Appellant moved in limine to exclude the dying declaration "Roo Roo shot me again." The trial court entertained Appellant's argument that focused in large part on whether Coleman's mother changed the wording of the dying declaration from her pre-trial testimony ("Roo Roo shot me again") to her trial testimony ("Ma, he got me. He got me this time."). Appellant argued that the change in wording made the mother's testimony too unreliable to present to the jury. Ultimately, the trial court found that Coleman's mother was permissibly using slightly different words to convey the same declaration. The court cautioned that she could not use the word "again" as part of the declaration or

4

otherwise indicate that this was a repeat of a prior shooting episode because the potential prejudice of implying that Appellant shot Coleman previously outweighed the probative value of a completely verbatim statement. Put differently, including the word "again" added nothing to the certainty of Coleman identifying Appellant as his shooter, while it could prejudice the jury against Appellant based on commission of an uncharged prior shooting.

Coleman's mother followed the court's admonition and avoided using the word "again" or implying Appellant had previously shot Coleman. However, when Coleman's father was questioned about Coleman's dying declaration, he testified that Coleman said, "Roo Roo done shot me again." The trial court sustained Appellant's objection, denied his motion for mistrial, and instructed the jury to disregard the answer. The father then repeated his statement, but without the word "again." When denying the motion for mistrial, the trial court found that the father's inclusion of the word "again" was inadvertent, and that it was said quickly and only once. The trial court noted that the jury would be or had been advised of the prior episode in which both Coleman and Appellant were shot, even though there was no testimony about who shot either of them in the previous incident.

Importantly, the trial court also concluded that any potential harm was eliminated by the curative instruction. Florida law is clear that an appropriate, timely curative instruction can sufficiently eliminate the harmful nature of the improper comment so that a mistrial is not required. *See Walker v. State*, 707 So. 2d 300, 312 (Fla. 1997); *Johnston v. State*, 774 So. 2d 952, 953-54 (Fla. 5th DCA 2001). Accordingly, we find that the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

USE OF FELONY JUDGMENTS TO IMPEACH DYING DECLARANT

Appellant next argues that the trial court erred in limiting his impeachment of the victim's dying declaration by not allowing Appellant to introduce copies of Coleman's felony judgments and sentences. While cross-examining Coleman's mother, Appellant attempted to introduce copies of judgments and sentences proving that Coleman had three felony convictions. The State stipulated that Coleman had three felony convictions and agreed that Appellant could inquire of the mother if that were the case. However, the State objected to the introduction of the judgments and sentences. The trial court agreed with the State. The court allowed Appellant to elicit testimony that Coleman had three felony convictions. The parties' stipulation, that Coleman had three convictions, was read to the jury. The court, however, did not allow Appellant to introduce the three felony judgments into evidence. "A trial court's ruling on the admission of evidence is reviewed by an appellate court under an abuse of discretion standard." *Troy v. State*, 948 So. 2d 635, 650 (Fla. 2006) (citation omitted).

Florida law allows the admission of a statement made under the belief of impending death as a hearsay exception. § 90.804(2)(b), Fla. Stat. (2016). Once such a statement is admitted into evidence, "credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness." § 90.806(1), Fla. Stat. (2016).

One method of attacking a witness's credibility is through evidence of prior felony convictions. § 90.610(1), Fla. Stat. (2016). "When there has been a prior conviction, only the fact of conviction can be brought out, unless the witness denies the conviction. If the witness denies ever having been convicted, or misstates the number of previous

6

convictions, counsel may impeach the witness by producing a record of past convictions." *Fulton v. State*, 335 So. 2d 280, 284 (Fla. 1976) (citations omitted). Here, the trial court did not abuse its discretion by limiting the impeachment of the dying declarant to proof of the number of Coleman's felony convictions. Indeed, it would have been an abuse of discretion under these circumstances to have allowed introduction of the related felony judgments and sentences. *See Mathis v. State*, 135 So. 3d 484, 485-86 (Fla. 2d DCA 2014) (finding that "the trial court abused its discretion in admitting the certified copies of the prior convictions and sentences" to impeach the defendant-declarant's hearsay statements). Therefore, we affirm as to this issue as well.

SENTENCING CONSIDERATIONS

Appellant asserts that the trial court imposed a vindictive sentence and that it considered inappropriate factors in determining what sentence to impose.

Appellant points out that he was sentenced to thirty years in prison after his first trial, compared to a life sentence with a twenty-five year minimum mandatory following his second trial. "The issue of whether a defendant's sentence is vindictive is a question of law subject to de novo review." *Simplice v. State*, 134 So. 3d 555, 556 (Fla. 5th DCA 2014) (citation omitted). When a criminal defendant has a re-trial and receives a higher sentence than after the first trial, the defendant has the burden of showing vindictiveness when the second sentence is imposed by a different judge. *Kovaleski v. State*, 1 So. 3d 254, 258 (Fla. 4th DCA 2009) ("A re-sentence after a reversal and re-trial which is more onerous than the original sentence is presumed vindictive where imposed by the same judge, but when, as in this case, a different judge imposes the increased sentence, the presumption does not apply and the defendant has the burden of demonstrating

7

vindictiveness." (citing *Texas v. McCullough*, 475 U.S. 134 (1986))). The testimony was similar in many respects in both trials. However, it was only in the second trial that evidence was introduced to establish that Appellant requested his former girlfriend to provide him with a false alibi for the time of the shooting. Appellant did not prove that the second judge imposed a vindictive sentence as punishment for pursuing his appellate rights and insisting on a second trial.

However, the trial court appears to have considered an inappropriate factor when determining Appellant's sentence following his second trial and conviction. "Although an appellate court generally may not review a sentence that is within statutory limits under the Criminal Punishment Code, an exception exists, when the trial court considers constitutionally impermissible factors in imposing a sentence." *Nawaz v. State*, 28 So. 3d 122, 124 (Fla. 1st DCA 2010); *see also Gage v. State*, 147 So. 3d 1020, 1022 (Fla. 2d DCA 2014) ("Reliance upon improper sentencing factors is fundamental error." (citations omitted)).

During sentencing, the trial court described Appellant's attitude during trial as surly and noted that Appellant had no job and failed to support his children. These facts were not relevant to the crime charged. The trial court was apparently offended that Appellant maintained his innocence even though two juries convicted him, and found it "despicable" and "just plainly cruel" that Appellant attacked the victim's parents in his statement, in which he maintained that he did not shoot their son, that anything to the contrary was a lie, and that Coleman's parents knew it was a big lie.

Impermissible factors that the trial court may not consider during sentencing include "a defendant's assertions of his innocence and refusal to admit guilt." *Hannum v.*

8

*State*, 13 So. 3d 132, 135 (Fla. 2d DCA 2009) (citing *Bracero v. State*, 10 So. 3d 664, 665-66 (Fla. 2d DCA 2009); *Ritter v. State*, 885 So. 2d 413, 414 (Fla. 1st DCA 2004)). "[D]ue process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt." *Holt v. State*, 573 So. 2d 284, 292 (Fla. 1990). When the defendant denies committing the crime, "[i]t is also generally improper for the sentencing court to consider the defendant's lack of remorse." *Robinson v. State*, 108 So. 3d 1150, 1151 (Fla. 5th DCA 2013) (citations omitted).

We are aware that the trial court stated that the basis for the stiffer sentence was Appellant's danger to society and Appellant's attempt to fabricate an alibi. However, we cannot ignore the nature and extent of the trial court's discussion of irrelevant and impermissible factors during the sentencing hearing. "Because the court's comments could reasonably be construed as basing the sentence, at least in part, [on impermissible factors], and because we cannot say that the sentence would have been the same without the court's impermissible consideration of [that factor], we vacate appellant's sentence and remand for resentencing before a different judge." *Torres v. State*, 124 So. 3d 439, 442 (Fla. 1st DCA 2013).

Accordingly, we affirm Appellant's conviction of second-degree murder, but remand for resentencing before a different judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

SAWAYA and BERGER, JJ., concur.