DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARCUS DEONTE STRONG,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-4226

[June 20, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Lawrence M. Mirman, Judge; L.T. Case No. 2014001001CFBXMX.

Carl H. Lida and Joshua H. Lida of Carl H. Lida, P.A., Plantation, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Joseph D. Coronato, Jr., Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges his sentences imposed after his open plea to the court, contending that the trial court relied on factors unsupported by the evidence in the case. The trial judge attributed to the defendant crimes for which he had not been arrested or charged, nor for which there was any evidence of his involvement. Consideration of unproven criminal activity violates due process. We therefore reverse and remand for a new sentencing hearing.

Appellant Strong entered an open nolo contendere plea to Count I, third degree grand theft; Count II, burglary of a dwelling; Count III, possession of burglary tools; Count IV, burglary of a dwelling. These charges arose out of two burglaries on Jupiter Island, Florida, on August 4, 2014. In each of the burglaries, entry was gained by smashing a rear glass door, and jewelry was taken. Appellant was definitively tied to only one burglary through DNA evidence on a pillowcase. When officers identified a suspicious vehicle in the area, an officer was able to stop it on August 7,

1

2014. Appellant and two co-defendants were in the vehicle.

One co-defendant, Greg Taylor, confessed to the authorities both his involvement in the Jupiter Island burglaries and his participation in two other similar burglaries in western Martin County. He told detectives that appellant was not involved in the western burglaries.

Appellant pled guilty to the charges. Prior to sentencing, the State submitted a memorandum to the court outlining the four burglaries. In it, the State claimed that all of the burglaries qualified as "pillowcase" burglaries. This is a term used by prosecutors to describe a rash of burglaries committed in Martin County by residents of Broward County. The State's entire presentation at sentencing consisted of evidence regarding the pillowcase burglaries. A detective testified that the burglars would use a pillowcase from the burgled home to carry out jewelry and other items. This detective went to Broward County and found the rental agency where "they" rented vehicles, without identifying to whom she was referring. After the arrest of Taylor and appellant, the burglaries stopped. The detective did not testify as to any specific information tying appellant to any of these crimes.

Appellant sought a downward departure from the lowest permissible sentence of 45.75 months in prison. He was nineteen at the time of the burglaries and had no criminal record. His mother, sisters, and cousin testified that he had grown up in a single-parent family and was a good person. They testified that committing these burglaries was entirely inconsistent with his character. His mother testified that he had gotten involved with the wrong set of friends.

In pronouncing sentence, the court first noted that "sending a message to the community" was not a proper consideration. After listening to the argument of counsel and the request for a downward departure, the court said, "[E]ven if mitigating circumstances may exist, they do not warrant departure because this is a case that cries out for punishment. It's a case that terrorized this community, instilling fear and insecurity in its residents." The court then sentenced appellant to a total of twenty-five years for the charges from the two burglaries, [1] sentencing above even the state's recommendation of twenty years. Later, co-defendant Taylor, who

---

[1] Strong was sentenced to five years on Count I the grand theft; fifteen years on Count II burglary of a dwelling, concurrent with Count I; five years on Count III, possession of burglary tools; and ten years on Count IV burglary of a dwelling, concurrent with Count III but consecutive to Counts I and II.

was involved with all four burglaries mentioned in the state's sentencing memorandum, was sentenced to 10.2 years in prison, largely based upon his cooperation with the authorities.

After sentencing, appellant's counsel filed a timely motion to vacate the plea based on ineffective assistance of counsel. The trial court denied the motion.[2] Appellant now appeals his sentence, contending that the trial court relied on unsubstantiated matters in passing sentence.

Although a sentence is "generally unassailable" when it is within the statutory limits, a court violates due process by considering unsubstantiated matters. *See Williams v. State*, 193 So. 3d 1017, 1018 (Fla. 1st DCA 2016). Our court has held "that unsubstantiated allegations of misconduct may not be considered by a trial judge at a criminal sentencing hearing and to do so violates *fundamental* due process." *Reese v. State*, 639 So. 2d 1067, 1068 (Fla. 4th DCA 1994) (emphasis added). In *Hillary v. State*, 232 So. 3d 3, 4 (Fla. 4th DCA 2017) (quoting *Fernandez v. State*, 212 So. 3d 494, 496 (Fla. 2d DCA 2017)), we also held, "'[A] trial court's consideration of a constitutionally impermissible sentencing factor is a fundamental error in the sentencing process' which is reviewable for the first time on direct appeal."

Recently, in *Norvil v. State*, 191 So. 3d 406 (Fla. 2016), our supreme court held that a court may not consider matters outside the provisions of

---

[2] The dissent contends that the appeal is untimely filed. The motion to vacate the plea was filed within thirty days of the sentence imposed, making it timely under Florida Rule of Criminal Procedure 3.170(l) and postponing rendition for purposes of appeal. *See* Fla. R. App. P. 9.020(i)(1). Although the motion was styled Motion to Vacate Plea Based upon Ineffective Assistance of Counsel 3.850, the ground was misadvice of counsel. In substance, it was a motion pursuant to the Rule, not a postconviction ineffective assistance claim. In any event, the court erred in failing to treat it as a Rule 3.170(l) motion. *See Applegate v. State*, 23 So. 3d 211, 212 (Fla. 2d DCA 2009). Further, a timely filed motion to vacate the plea defers rendition of the sentencing judgment. *See Wilson v. State*, 128 So. 3d 898, 899 (Fla. 4th DCA 2013). It would be ineffective assistance on the face of the record for appellant's attorney to have filed a postconviction motion and thus cut off the appellant's right to appeal his sentence. The appeal was timely from the denial of the motion by the trial court. Furthermore, the State never argued in its brief or by motion to dismiss that the appeal was untimely. While jurisdiction cannot be conferred on the court simply by failing to object to an untimely appeal, this court determines its own jurisdiction, and we conclude that the timely filed motion should be treated as a Rule 3.107(l) motion, making the appeal timely.

the Criminal Punishment Code in sentencing a defendant.[3] In *Norvil*, the court considered an arrest subsequent to the charged crime. *Id.* at 407. The court explained that a subsequent arrest was not listed as a factor for consideration under the CPC or in the presentence investigation report, and thus, could not be considered in sentencing. *Id.* at 409-10.

The trial court violated constitutional due process by considering unsubstantiated allegations of misconduct in this case. The State presented substantial evidence regarding other "pillowcase" burglaries without ever tying them in any way to appellant, who was charged with only two burglaries on one day. There was no evidence that appellant had any participation with any other burglaries. Nevertheless, the trial court found that this case "terrorized a community" without any evidence to support that these two burglaries, committed on the same day, had that effect on the community. Instead, it is apparent that the court connected appellant with all the pillowcase burglaries and sentenced him in consideration of the effect that they had on the community.

Moreover, these other burglaries, for which there was no evidence of appellant's involvement, are not within the factors which a court may consider under the CPC. Those factors which the court may consider under *Norvil* are limited to the defendant's involvement in the current charges or the defendant's prior arrests or convictions, not the charges against other persons with whom the defendant may or may not have been associated. "[U]nsubstantiated allegations of misconduct or speculation that the defendant probably committed other crimes may not be relied upon by a trial court in imposing sentence." *Nusspickel v. State*, 966 So. 2d 441, 445 (Fla. 2d DCA 2007).

It is the State's burden to show that the trial court did not rely on impermissible factors in sentencing. *See Norvil*, 191 So. 3d at 409. In *Mosley v. State*, 198 So. 3d 58, 60 (Fla. 2d DCA 2015) (alteration added), the court further explained what the State must show:

---

[3] The State cites to *Imbert v. State*, 154 So. 3d 1174 (Fla. 4th DCA 2015), as authority for consideration of uncharged crimes. *Imbert* relied on this court's decision in *Norvil v. State*, 162 So. 3d 3 (Fla. 4th DCA 2014). However, *Norvil* was quashed by the supreme court in *Norvil v. State*, 191 So. 3d 406 (Fla. 2016). Moreover, in *Imbert*, the uncharged conduct considered by the trial court was directly tied to the defendant. In this case, the uncharged conduct was never directly tied to the appellant.

4

> The State bears the burden to show from the record as a whole that the trial court did not consider impermissible factors in rendering its sentence. [citation omitted] We must examine the record to determine whether it "may reasonably be read to suggest" that a defendant's sentence was the result, at least in part, of the consideration of impermissible factors. *See Moorer v. State*, 926 So. 2d 475, 477 (Fla. 1st DCA 2006).

The State has failed to carry its burden. When the record as a whole is considered, there is more than enough to reasonably suggest that the court relied on impermissible factors in sentencing appellant.

Because the court considered unsubstantiated matters in sentencing appellant, the court committed fundamental error. We reverse and remand for sentencing by a different judge.

GROSS, J., concurs.
LEVINE, J., dissents with opinion.

LEVINE, J., dissenting.

I dissent for several reasons. Initially, this court lacks jurisdiction because the appeal was untimely. The trial court entered its sentence on September 29, 2016. Appellant did not file a notice of appeal until December 14, 2016, well past the thirty day time limit for filing an appeal. *See* Fla. R. App. P. 9.110(b).

Appellant filed three motions after sentencing, none of which suspended rendition of the judgment and sentence from September 29, 2016. First, he filed a "Motion to Vacate Plea Based on Ineffective Assistance of Counsel 3.850," which the trial court dismissed without prejudice because there was no oath or affidavit. Second, appellant filed a pro se motion to clarify and correct sentence, which the trial court struck because appellant was represented by counsel. Third, appellant filed a rule 3.800(c) motion to mitigate sentence, but no ruling on that motion appears in the record.[4] None of these motions tolled the time for filing an appeal. *See* Fla. R. App. P. 9.020(i)(1) (identifying the types of motions that toll rendition of a final order). The notice of appeal cites the order dismissing the motion to vacate as the order being appealed. However, that order explicitly stated that it was a non-final, non-appealable order.

---

[4] According to the lower court docket, the trial court dismissed the motion because of appellant's pending appeal.

The majority treats the motion to vacate as a rule 3.170(*l*) motion to withdraw plea, since a rule 3.170(*l*) motion, unlike a rule 3.850 motion, tolls rendition of the judgment and sentence until disposition of the motion. *See* Fla. R. App. P. 9.020(i)(1). Without considering the motion as a rule 3.170(*l*) motion, this court would be without jurisdiction. However, there is no basis to treat the rule 3.850 motion as a rule 3.170(*l*) motion. The motion cites rule 3.850 in its title, and the substance of the motion refers to *Strickland* and the alleged ineffective assistance of counsel. The trial court dismissed the motion without prejudice because a rule 3.850 motion requires an oath or affidavit. Appellant did not object or ask the trial court to treat the motion as a rule 3.170(*l*) motion. Appellant, the state, and the trial court all understood the motion to be filed under rule 3.850, not rule 3.170(*l*). Even on appeal, appellant does not suggest the motion was, in fact, a rule 3.170(*l*) motion.

The majority states that "[i]t would be ineffective assistance on the face of the record for appellant's attorney to have filed a postconviction motion." While that eventually could turn out to be true, that does not transform the motion that was filed into a rule 3.170(*l*) motion so as to confer jurisdiction. Although the state does not argue that the appeal was untimely, it is the duty of this court—and not the state—to determine jurisdiction. Neither the court nor the parties can create jurisdiction where it does not exist. *See City of W. Palm Beach v. Palm Beach Cty. Police Benev. Ass'n*, 387 So. 2d 533, 534 (Fla. 4th DCA 1980) (recognizing that jurisdiction cannot be conferred by the failure to object); *W. 132 Feet v. City of Orlando*, 86 So. 197, 198-99 (Fla. 1920) ("Courts are bound to take notice of the limits of their authority and if want of jurisdiction appears at any stage of the proceedings, original or appellate, the court should notice the defect and enter an appropriate order.").

I further dissent on the merits. Because appellant did not preserve the sentencing issue by raising a contemporaneous objection in the trial court, this court may consider the error only if it is fundamental. *Jackson v. State*, 983 So. 2d 562, 574 (Fla. 2008). No fundamental error occurred below because the trial court did not consider any constitutionally impermissible sentencing factors.

As the majority recognizes, a sentence is "generally unassailable" when, as here, it is within the statutory limits. *Williams v. State*, 193 So. 3d 1017, 1018 (Fla. 1st DCA 2016). An exception to this rule exists only where the imposition of sentence violates a defendant's constitutional rights.

6

Examples of such violations are: (1) when a sentencing court relies upon conduct for which a defendant has been acquitted, (2) where a judge imposes a sentence based on the race, religion, political affiliation, or national origin of the defendant, (3) where a judge takes his own religious beliefs into account in sentencing, (4) where a judge improperly considers a defendant's lack of remorse or failure to accept responsibility, or (5) where a sentence is the product of judicial vindictiveness.

*Alfonso–Roche v. State*, 199 So. 3d 941, 949-50 (Fla. 4th DCA 2016) (Gross, J., concurring) (citations omitted).

While it is true that the consideration of constitutionally impermissible factors is fundamental error, the majority fails to show where the trial court considered any constitutionally impermissible factors such as unsubstantiated allegations of misconduct. *See Reese v. State*, 639 So. 2d 1067, 1068 (Fla. 4th DCA 1994) (holding that unsubstantiated allegations of misconduct may not be considered at sentencing).

To the contrary, the record affirmatively shows that the trial court considered only the two burglaries to which appellant pled. At the conclusion of the state's argument at the sentencing hearing, the trial court even sought clarification as to the burglaries in which appellant was involved:

THE COURT: Before we get to the Defendant['s] argument, the argument as far as sending a message to the community, I can no longer, that's not a proper consideration for me, uh, at this juncture under the law. So, I'm going to strike that.

But before we get to the Defendant['s] argument, uh, let me think if I had any other questions based on what I reviewed. The—what about just so you could, uh, address the relative culpability or the involvement of the defendant. I—I remember about the third person, but between the two defendants here—

[PROSECUTOR]: Right.

THE COURT: —you know?

7

[PROSECUTOR]: There were four homes. *He was involved in two of the homes* on Jupiter Island.

Uh, and as far as the culpability there was other physical evidence found in both of the homes that linked him to—while there's physical evidence found in the one home, the DNA, uh, linking him to it. As far as what he did in the home, uh, we don't have specific information because he didn't cooperate with us, so I can't comment on that.

As far as the other home when they were stopped in the vehicle, uh, they—there was evidence from the other home found that had been taken of, uh, personalized coins, uh, from the victim's husband who was with the (indiscernible) as well as burglary tools that, when processed, matched, uh, markings from the home.

Uh, so I can, as far as his involvement, I don't—he didn't cooperate.

THE COURT: Is there any suggestion in the facts or that you know of that one dominated the other?

[PROSECUTOR]: Out of the two?

THE COURT: Yes.

[PROSECUTOR]: No.

(emphasis added). Thus, based on the state's own representation, the court was keenly aware that appellant was involved in only two burglaries. As such, the majority is incorrect in stating that "it is apparent that the court connected appellant with all the pillowcase burglaries."

The majority notes that appellant's sentence was greater than the state's recommended sentence and that a co-defendant received a lesser sentence. However, these factors do not change the fact that appellant's sentence was legal as it fell within the statutory limits under the Criminal Punishment Code. Additionally, a trial court is not bound by the sentencing recommendation of a state attorney. *State v. Adams*, 342 So. 2d 818, 819-20 (Fla. 1977). That a co-defendant received a lesser sentence also does not demonstrate fundamental error because the co-defendant's sentence was the result of a plea and, as the majority acknowledges, was

"largely based upon his cooperation with the authorities."

The majority states that "[t]he State's entire presentation at sentencing consisted of evidence regarding the pillowcase burglaries." In fact, the state merely presented evidence of the entire criminal enterprise of appellant and his co-defendants. This evidence consisted of the testimony of a detective as well as the submission by the state of a sentencing memorandum and attachments—including the arrest affidavit, crime lab reports, and cell site records—detailing the criminal actions conducted by appellant and the co-defendants. It would be unreasonable to say that a court cannot even hear such evidence to place the defendant's conduct into context within the entire criminal enterprise.

The memorandum and attachments recounted that four burglaries occurred during a week-and-a-half timeframe, including two burglaries on July 26 in Indiantown and Stuart and two burglaries on August 4 in Jupiter Island. In all four burglaries, the suspects broke a rear glass door and took jewelry and other items. Blood found on a pillowcase in one of the homes burglarized on August 4 matched appellant's DNA. Three days after the August 4 burglaries, an officer conducted a traffic stop on a vehicle driven by appellant in which the two co-defendants were passengers. The vehicle had been seen in Jupiter Island around the time of the August 4 burglaries. Inside the vehicle, detectives found stolen items from one of the burglarized Jupiter Island homes. The detectives also found a crowbar with paint matching pry marks from the second burglarized Jupiter Island home. Cell site information placed appellant and the two co-defendants on or near Jupiter Island around the time of the August 4 burglaries. Appellant was charged with and pled to the August 4 Jupiter Island burglaries. One of the co-defendants pled to all four burglaries.

The majority makes much of the fact that the sentencing memorandum addressed all four burglaries. However, this memorandum was directed to both appellant and a co-defendant. The memorandum made clear that appellant was charged with only two of the burglaries, while the co-defendant was charged with all four. Although the majority states that "[t]he detective did not testify as to any specific information tying appellant to any of these crimes," the sentencing memorandum and attachments tied appellant to the two burglaries. Additionally, by entering the plea to the two burglary charges, appellant admitted that there was a factual basis for the charges against him.

9

Significantly, the trial court did not make any statements indicating that its sentence was motivated by an improper factor, including "consideration of unproven criminal activity." The fact that the state referenced the July 26 "pillowcase burglaries" does not in any way suggest the trial court adopted such reasoning as its own, especially where the trial court did not make any statements indicating agreement with such arguments. In fact, the trial court did not make any reference whatsoever to the July 26 burglaries. *See Charles v. State*, 204 So. 3d 63, 66-67 (Fla. 4th DCA 2016) (affirming where, after the state urged the court to "send a message," the court imposed the maximum sentence without any comment or elaboration); *Barlow v. State*, 238 So. 3d 416, 417 (Fla. 1st DCA 2018) (affirming where there was no indication that the trial court based its sentence on testimony regarding uncharged conduct).

"[T]rial judges are routinely made aware of information which may not be properly considered in determining a cause. Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence." *Harvard v. State*, 414 So. 2d 1032, 1034 (Fla. 1982). Where there is no evidence in the record that the sentencing court relied upon an allegedly improper argument by the state, this court will not speculate and infer impropriety. *See Charles*, 204 So. 3d at 66. There is no case law to support the proposition that even if there was improper argument by the state—which the record does not show—that such improper argument by the state, without adoption by the trial court, in and of itself creates fundamental error.

The majority states that "the trial court found that this case 'terrorized a community' without any evidence to support that these two burglaries, committed on the same day, had that effect on the community." The trial court could find that the crimes potentially affected the greater community beyond the two victims in this case based on appellant's admission and plea. Would the majority require the state to introduce testimony from the victims' neighbors to prove the effect of these two burglaries on the community? Common sense dictates not.[5] Unless the legislature creates a calculus to determine how many burglaries create "terror" in a community or we ask judges to remove this word from their vocabulary, then the trial court should be permitted to use this language to characterize these two burglaries while imposing a sentence within the legal statutory limits. At best, the trial court's comment characterizes the

---

[5] Additionally, this sort of testimony may be irrelevant and thus inadmissible. *See* § 90.402, Fla. Stat.

10

gravity of the two burglaries—to which appellant pled—on the community. At worst, this "stray remark" does not reflect an underlying improper sentencing rationale. *See Oyola v. State*, 158 So. 3d 504, 509 (Fla. 2015) ("We have affirmed sentencing orders when the inappropriate language is confined to a *stray remark* that does not reflect an underlying improper sentencing rationale.") (emphasis added).

It is not reasonable to infer from the trial court's isolated comment that the trial court considered all four burglaries in sentencing appellant. There is no reason to doubt that the trial court earnestly believed that the two particular burglaries charged to appellant constituted "terrorizing the community." Although this type of comment may be considered by some observers as being somewhat overstated, it simply is not the type of language that requires a reversal or resentencing.

This case is unlike *Reese*, 639 So. 2d 1067, upon which the majority relies. In that case, the prosecutor argued during sentencing that the defendant appeared in other drug sting operation videos and was a principal in other cases. Despite the defense's objection, the trial court stated that it would consider the state's argument for sentencing purposes. This court reversed, holding that the trial court could not consider unsubstantiated allegations of misconduct. In contrast with *Reese*, here appellant did not object to the state's arguments, and the trial court never gave any indication that it would actually consider any unsubstantiated allegations of misconduct.

The facts of this case are actually contrary to the facts in those cases which have resulted in reversal based on a trial court's comments during sentencing. Before pronouncing its sentence, the trial court did not make comments suggesting it accepted the state's arguments of uncharged crimes as true. Rather, the trial court focused its inquiry on the particular burglaries with which appellant was actually charged. *Cf. Norvil v. State*, 191 So. 3d 406 (Fla. 2016) (reversing where, immediately before pronouncing sentence, trial court emphasized and relied upon a subsequent arrest and pending charge); *Hillary v. State*, 232 So. 3d 3 (Fla. 4th DCA 2017) (reversing where trial court, by its own admission, considered defendant's subsequent arrest without conviction when sentencing defendant for the primary offenses); *Williams v. State*, 193 So. 3d 1017, 1019 (Fla. 1st DCA 2016) (reversing where "it is clear from the trial judge's comments at the sentencing hearing that he accepted as true, and based his sentencing decision on, the prosecutor's assertions" of unsubstantiated conduct); *Drinkard v. State*, 177 So. 3d 993 (Fla. 1st DCA 2015) (reversing where, at sentencing, trial court repeatedly referred to the

state's evidence that appellant had been racing on a highway, conduct for which appellant had been acquitted); *Yisrael v. State,* 65 So. 3d 1177 (Fla. 1st DCA 2011) (reversing where court questioned defendant about dismissed and pending charges shortly before imposing maximum allowable sentence).

The majority argues that the state did not meet its burden of showing that the trial court did not rely on impermissible factors in sentencing. However, both of the cases the majority relies on—*Norvil* and *Mosley v. State,* 198 So. 3d 58 (Fla. 2d DCA 2015)—involved preserved error and not fundamental error. The fundamental error "standard imposes *a high burden on the defendant* to establish that the error 'goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'" *Abdool v. State*, 53 So. 3d 208, 220 (Fla. 2010) (emphasis added) (quoting *Bailey v. State,* 998 So. 2d 545, 554 (Fla. 2008)). Appellant has not met his burden.

In conclusion, there is no fundamental error requiring a reversal and resentencing. Nothing in the record shows that the trial court relied on "unproven criminal activity" to violate due process. Due process means the right to a fair sentencing process. *United States, ex rel. Welch v. Lane*, 738 F.2d 863, 864-65 (7th Cir. 1984). Due process does not require reversal of appellant's sentence based on the facts of this case. Therefore, I dissent.

*             *             *

***Not final until disposition of timely filed motion for rehearing.***