# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2022-0703
LT Case Nos. 2020-CF-001354-A
2020-CF-001355
2020-CF-001390

_____

MYKEL ANTHONY NELSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Citrus County.
Richard A. Howard, Judge.

Victoria E. Hatfield, of O'Brien Hatfield Reese, P.A., Tampa, for
Appellant.

Ashley Moody, Attorney General, Tallahassee, and Kaylee D.
Tatman, Assistant Attorney General, Daytona Beach, and Henry
C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief
Deputy Solicitor General, and Christopher J. Baum, Senior
Deputy Solicitor General, Tallahassee, for Appellee.

June 28, 2024

ON REHEARING

PRATT, J.

Having requested supplemental briefing from both parties, we *sua sponte* rehear this appeal. We vacate our opinion dated January 12, 2024, and substitute the following opinion in its place.

In this appeal, we consider whether the trial court fundamentally erred by failing to properly consider a downward departure request or by relying on impermissible sentencing considerations. We conclude that Appellant has not carried his burden to show fundamental error.

**I.**

On November 3, 2020, a confidential informant bought approximately four ounces of cannabis from Mykel Anthony Nelson in exchange for $500. About a month later, the same confidential informant paid Nelson $1,500 for a pound of the drug. During both transactions, Nelson used his name and his personal cellphone, and the transactions took place at his residence.

The confidential informant then negotiated a third, larger transaction for 28 pounds of cannabis, with the purchase to occur on December 10, 2020. That buy never happened. Instead, law enforcement executed a search warrant at the residence and arrested Nelson, who cooperated by informing the officers that they would find cannabis. Officers found 28.998 pounds of the drug in the home.

Nelson's arrest resulted in three criminal cases against him. In total, the State charged him with the following offenses: sale or possession of cannabis with intent to sell, a third-degree felony; unlawful use of a two-way communications device, a third-degree felony; trafficking in cannabis in excess of twenty-five pounds but less than 2,000 pounds, a second-degree felony; possession of a place for trafficking, a third-degree felony; and possession of drug paraphernalia, a first-degree misdemeanor. Nelson, who had no prior criminal convictions, pled no contest to all the charges. He and the State agreed that the State would not waive the three-year minimum mandatory prison sentence applicable to the trafficking charge, and that Nelson's sentence would be capped at the bottom of the guidelines range with the discretionary trafficking enhancement—87.23 months. Thus, the sentencing range with the

agreed-upon cap would be between 36 and 87.23 months of incarceration.

At the sentencing hearing, the court entertained argument from both Nelson and the State. Nelson's counsel requested a downward departure to the mandatory minimum of 36 months. The State urged the court to impose an 87.23-month guidelines sentence. During its argument, the State presented two photos of firearms found in Nelson's home, which prompted the court to ask, "[w]hat about the guns in these pictures?" The State responded by noting that Nelson stored other firearms in his home, and that "a possible murder a couple of months ago that was probably related to the sale of cannabis" had occurred in Citrus County. However, the State did not argue that Nelson himself was in any way connected to the murder. The State also did not argue that Nelson possessed his firearms to further his illicit activities or for any other unlawful purpose, and it conceded that it had not charged him with armed trafficking because the firearms were not located near the cannabis.

After hearing a brief rebuttal argument from Nelson's counsel, the court announced Nelson's sentence. The court applied the discretionary trafficking enhancement and sentenced Nelson to 87.23 months of incarceration on counts 1 and 2 (to run concurrently). Immediately after pronouncing this sentence, the court stated:

> And what hurts you most, Mr. Nelson, was . . . the photographs of the guns. They did not charge you with those. I did not take that into account; but why you did this, I do not know. I do not know other than sheer greed. But it's punished, it's sanctioned. It could have been so much worse.

The court then imposed three-year sentences on the remaining felony counts, with the sentences to run concurrently with the concurrent 87.23-month sentences.

Nelson has appealed his sentences. We have jurisdiction.

3

## II.

Nelson argues that he is entitled to a new sentencing before a different judge. First, he argues that the trial court failed to properly consider and address his request for a downward departure.[1] Second, he argues that the trial court improperly relied upon his uncharged firearm ownership in pronouncing his sentence. Because Nelson failed to assert contemporaneous objections below, we review his claims for fundamental error. *See State v. Garcia*, 346 So. 3d 581, 585 (Fla. 2022).

## III.

"A trial court's decision whether to depart from the guidelines is a two-part process. First, the court must determine whether it *can* depart, i.e., whether there is a valid legal ground and adequate factual support for that ground in the case pending before it (step 1)." *Banks v. State*, 732 So. 2d 1065, 1067 (Fla. 1999). "Second, where the step 1 requirements are met, the trial court further must determine whether it *should* depart, i.e., whether departure is indeed the best sentencing option for the defendant in the pending case." *Id.* at 1068. "This second aspect of the decision to depart is a judgment call within the sound discretion of the court and will be sustained on review absent an abuse of discretion." *Id.*

---

[1] The district courts of appeal have divided over whether we have authority to review a trial court's discretionary decision to deny a downward-departure request. *Compare Wilson v. State*, 306 So. 3d 1267, 1272–73 (Fla. 1st DCA 2020), *and Wyden v. State*, 958 So. 2d 540, 540 (Fla. 3d DCA 2007), *with Fogarty v. State*, 158 So. 3d 669, 671 (Fla. 4th DCA 2014) (en banc), *and Barnhill v. State*, 140 So. 3d 1055, 1059–60 (Fla. 2d DCA 2014) (en banc). Our court has concluded that such discretionary denials are appealable. *See Kiley v. State*, 273 So. 3d 193, 194 n.2 (Fla. 5th DCA 2019). But the Florida Supreme Court stands poised to resolve the inter-district conflict. *See Parrish v. State*, 349 So. 3d 485 (Fla. 1st DCA 2022), *rev. granted*, No. SC2022-1457, 2023 WL 5223320 (Fla. Aug. 15, 2023).

When faced with a downward-departure request, the trial court has extremely broad discretion at the second step. *See id.* ("Discretion is abused only where no reasonable person would agree with the trial court's decision."). But it must exercise that discretion. *See id.* ("[T]he court must weigh the totality of the circumstances in the case, including aggravating and mitigating factors."). As Nelson points out, the First District has held that a trial court commits fundamental error when it follows an "arbitrary policy not to consider" a lawful, below-guidelines sentence "without any reflection on the merits of [the defendant's] case." *Pressley v. State*, 73 So. 3d 834, 836 (Fla. 1st DCA 2011) (responding to defendant's request for "boot camp," a type of youthful offender sentence, the trial court announced, "[s]ir, I don't do boot camp").

Nothing in the record shows that the trial court failed to follow the *Banks* analysis, and Nelson thus has failed to demonstrate error (much less fundamental error). Nowhere did the court conclude that it lacked discretion to grant a downward departure. If anything, the sentencing hearing transcript suggests that the trial court *did* exercise its *Banks* "step two" discretion. Unlike in *Pressley*, the court did not announce any arbitrary policy against considering the kind of downward departure that the defendant sought. Rather, the court imposed a guidelines sentence after hearing extensive argument by counsel, and it explained its sentencing decision by pointing to particular facts of Nelson's case. Therefore, it appears that the trial court considered Nelson's downward-departure request and exercised its discretion to deny it. At a minimum, the record provides no basis for us to conclude otherwise. *See King v. State*, 375 So. 3d 389, 395 (Fla. 5th DCA 2023) (noting that the appellant has the "burden to demonstrate error on appeal").

## IV.

Nelson next argues that even if the trial court considered his downward-departure request, it relied on impermissible factors in pronouncing his sentence. Of course, trial courts generally enjoy wide discretion in sentencing convicted defendants within the range of sentences established by the Legislature. *See Nusspickel v. State*, 966 So. 2d 441, 444 (Fla. 2d DCA 2007). However, "'an

5

exception exists, when the trial court considers constitutionally impermissible factors in imposing a sentence.'" *Kenner v. State*, 208 So. 3d 271, 277 (Fla. 5th DCA 2016) (quoting *Nawaz v. State*, 28 So. 3d 122, 124 (Fla. 1st DCA 2010)). As relevant here, "[a] trial court's consideration of unsubstantiated allegations of misconduct in sentencing constitutes a due process violation." *Petit-Homme v. State*, 284 So. 3d 1126, 1128 (Fla. 5th DCA 2019). In short, just as "[d]ue process prohibits an individual from being *convicted* of an uncharged crime," *Morgan v. State*, 146 So. 3d 508, 512 (Fla. 5th DCA 2014) (emphasis added), it also prohibits him from being *sentenced* for one based on "unsubstantiated allegations," *Shelko v. State*, 268 So. 3d 1003, 1005 (Fla. 5th DCA 2019).

As a preliminary matter, we note that Nelson devotes a portion of his initial brief to several purportedly impermissible arguments that the State advanced at the sentencing hearing, but that the court did not mention when pronouncing the sentence. This focus on the State, rather than the court, misses the mark. "[W]hen determining whether a court relied on impermissible sentencing factors, it is primarily the court's express rationale, not the evidence or arguments presented at sentencing, which controls." *Senser v. State*, 243 So. 3d 1003, 1011 (Fla. 4th DCA 2018). "The mere fact that the court had evidence of a potentially improper factor before it is insufficient to merit reversal." *Serrano v. State*, 279 So. 3d 296, 302 (Fla. 1st DCA 2019). To the extent that Nelson points to factors that the State mentioned but the court did not, he fails to demonstrate error.

Nelson does, however, point to one factor that the court itself mentioned: his firearms. The State disputes whether the court in fact considered this factor. It rightly points out that a court's express rationale controls the inquiry, and that we therefore must heavily defer to its statements of its reasons for the sentence rather than rely on the argument and evidence that the State presented at sentencing. *See Senser*, 243 So. 3d at 1011–12; *Serrano*, 279 So. 3d at 302. But that deference cuts both ways. Just as we defer to a trial court's statement that it did not rely on a factor, *see Hayes v. State*, 150 So. 3d 249, 252 (Fla. 1st DCA 2014), we likewise defer to a trial court's statement that it did, *see Colon v. State*, 53 So. 3d 376, 379 (Fla. 5th DCA 2011).

6

The wrinkle here is that the trial court both claimed and disclaimed reliance on Nelson's storage of firearms within his home. True, the trial court stated, "I did not take [the photographs of the guns] into account," but it also stated that this factor was "what hurts you the most." We can think of few more direct ways to indicate that a factor motivated a sentence than to say, immediately after announcing the sentence, that the factor is what hurts the defendant the most. The State does not cite—and our own research has not uncovered—any reported Florida appellate decision that deals with this scenario. In its rehearing motion, which we will deny as moot, the State points to cases dealing with statements that indirectly suggest a court may have considered an impermissible factor before the court unequivocally clarified that it did not. *See, e.g.*, *Hayes*, 150 So. 3d at 252; *Nusspickel*, 966 So. 2d at 446. But the State does not bring to our attention any case in which the trial court made two unequivocal statements, one claiming and the other disclaiming reliance on a factor.[2]

In the end, we need not decide which of the trial court's statements deserves deference in this case. That's because, even assuming that the trial court relied on the presence of firearms in Nelson's home, and even further assuming that such reliance

---

[2] This is not a case where the State presented evidence of a factor, or the court mentioned the factor in passing, but the court later disclaimed reliance on it. *Compare Hayes*, 150 So. 3d at 252; *Nusspickel*, 966 So. 2d at 446. It also is not a case in which the court passively listened to the State's presentation and then omitted mention of the factor that the State raised when imposing the sentence. *Compare Mercado v. State*, 353 So. 3d 1257, 1260 (Fla. 2d DCA 2023). It isn't even a case in which the court generically stated that it based the sentence on the evidence presented, without any specific reference to an impermissible factor contained within the State's presentation—something that some courts have held requires a re-sentencing. *Compare Martinez v. State*, 123 So. 3d 701, 704–05 (Fla. 1st DCA 2013); *Lundquist v. State*, 254 So. 3d 1159, 1160 (Fla. 2d DCA 2018).

7

would have been error,[3] Nelson cannot meet his burden to show *fundamental* error.

To be sure, as Nelson observes, our precedent in this context consistently has shifted the burden to the State and has treated reliance on improper sentencing factors as *per se* fundamental error. Under our precedent, we have asked not whether the trial court *in fact* relied upon an impermissible factor, but instead only whether "the record reflects that the trial judge *may* have relied upon impermissible considerations in imposing sentence." *Shelko*, 268 So. 3d at 1005 (emphasis added). Where the record so reflects, we have placed upon the State "the burden to show from the record as a whole that the judge did not rely on such considerations." *Id.* In applying this "may have relied" standard and this burden-shifting framework while reviewing for fundamental error, we were not alone. *See, e.g.*, *Mercado v. State*, 353 So. 3d 1257, 1259–60 (Fla. 2d DCA 2023); *Martinez v. State*, 123 So. 3d 701, 704–05 (Fla. 1st DCA 2013); *see also Mirutil v. State*, 30 So. 3d 588, 590–91 (Fla. 3d DCA 2010) (applying this standard where the claim was preserved).[4] We also were not alone in our broad statements that

_____

[3] In its answer brief, the State did not contest Nelson's argument that his firearm ownership was an impermissible sentencing consideration. Instead, it argued only that the court did not consider that factor. In its rehearing motion, the State now contests whether Nelson's keeping of firearms within his home was a permissible sentencing consideration. But as explained below, we need not—and therefore do not—decide that question.

[4] The "may have relied" standard appears to have originated from a misunderstanding of *Norvil v. State*, 191 So. 3d 406 (Fla. 2016). In *Norvil*, the Florida Supreme Court observed that the State "failed to show that the trial court did not rely on" an impermissible sentencing factor. *Id.* at 409. Courts have cited this passage as justification for placing the burden on the State once a defendant shows that the sentencing court "may have" relied on an impermissible consideration. *See, e.g.*, *Mercado*, 353 So. 3d at 1259; *Turner v. State*, 261 So. 3d 729, 734 (Fla. 2d DCA 2018); *Strong v. State*, 254 So. 3d 428, 432 (Fla. 4th DCA 2018) (citing *Norvil* for the unqualified proposition that "[i]t is the State's burden to show that the trial court did not rely on impermissible factors in

reliance on an unlawful sentencing consideration necessarily constitutes fundamental error. *See, e.g.*, *Shelko*, 268 So. 3d at 1005 ("A trial court commits fundamental error when it considers constitutionally impermissible factors when imposing sentence."); *accord Mercado*, 353 So. 3d at 1259; *Strong v. State*, 254 So. 3d 428, 431 (Fla. 4th DCA 2018); *Martinez*, 123 So. 3d at 704.

These district court of appeal cases—and the fundamental-error analysis that they applied—have been abrogated by the Florida Supreme Court's recent decision in *State v. Garcia*, 346 So. 3d 581 (Fla. 2022). There, the Court held that the trial court did not fundamentally err when it considered the defendant's post-arrest misconduct. *Id.* at 582–83. Garcia's first trial for arson had resulted in a hung jury, and while out on bond awaiting his second trial, he "made a menace of himself" through a series of violent, threatening, and erratic behaviors that prompted the court to revoke his bond. *Id.* at 583. The misconduct continued during his subsequent pre-trial detention. Garcia was then convicted on the arson charge, and he faced minimum and maximum sentences of 34.8 and 360 months. *Id.* at 583–84. Garcia asked for a downward-departure sentence of probation; the State recommended a sentence of 84 months. *Id.* at 584. "[B]ased on all the evidence, the severity of the crime, [and] the issues that were testified to," the court denied the downward-departure request and pronounced an 84-month sentence. *Id.* Relying on *Norvil v. State*, 191 So. 3d 406 (Fla. 2016), the Fourth District reversed and remanded for a re-sentencing, concluding that "the State had failed to sustain what the Fourth District characterized as the State's burden 'to show that the trial court did not rely on impermissible factors in sentencing,' even though 'the trial court made no comment

---

sentencing"). However, this "may have relied" standard shifts the burden to the State more readily than *Norvil* did. *Norvil* observed that the State failed to make the required showing only after the Court determined that "[t]he record demonstrates that the trial court relied on the" impermissible factor. 191 So. 3d at 409. In other words, *Norvil* did not shift the burden to the State until it determined, *without equivocation*, that the record showed reliance on the impermissible factor.

9

indicating that it had considered [Garcia's] subsequent misconduct in imposing sentence.'" *Id.* at 585.

The Florida Supreme Court declined to reconsider *Norvil*, in part because the *Norvil* defendant's counsel had "preserved an objection to the trial court's consideration of postarrest misconduct," whereas Garcia had not. *Id.* at 584 n.4. Therefore, rather than ask whether it is error for a sentencing court to rely on a defendant's post-arrest misconduct, the Court instead asked whether it is *fundamental* error to do so. *Id.* at 585. It answered that question in the negative, noting that, "[i]n the sentencing context, we have found fundamental error very rarely." *Id.*

As examples of fundamental errors in sentencing, the Court cited cases where the sentence exceeded the statutory maximum, where "a judge implemented an arbitrary policy of rounding up sentences," where the operative sentencing guidelines themselves were invalid, and where "the court imposed a sentence departing upward from the sentencing guidelines but failed to give reasons for doing so." *Id.* at 585–86 (citing, in the following order, *Bain v. State*, 730 So. 2d 296, 305 (Fla. 2d DCA 1999); *Parks v. State*, 765 So. 2d 35, 35–36 (Fla. 2000); *Cromartie v. State*, 70 So. 3d 559, 564 (Fla. 2011); *Harvey v. State*, 848 So. 2d 1060, 1064 (Fla. 2003); and *Thogode v. State*, 763 So. 2d 281, 281–82 (Fla. 2000)). The Court noted that Garcia's case presented none of these flaws. Instead, the sentencing court "heard argument on a motion for downward departure" and "considered 'all the evidence.'" *Id.* at 586. That evidence included Garcia's post-arrest misconduct, but it also included, among other aggravating circumstances, Garcia's prior conviction for aggravated battery and "evidence about the care with which Garcia's home had been primed for combustibility—and thus maximum danger to his neighbors and first responders." *Id.* "In light of all these considerations, looking at a sentencing range between 34.8 and 360 months, the court reasoned that a sentence of 84 months was appropriate." *Id.* *Garcia* concluded: "We cannot say that this determination reflects the trial court's having committed fundamental error on the order of an illegal sentence." *Id.* To hold otherwise, the Court noted, "would fit oddly indeed with settled—and recently reaffirmed— federal law" regarding the wide discretion that Anglo and American sentencing courts have enjoyed from the pre-Colonial

era through the present. *Id.* at 586–87 (citing *Concepcion v. United States*, 597 U.S. 481, 491 (2022); *United States v. Booker*, 543 U.S. 220, 233 (2005); and *Williams v. New York*, 337 U.S. 241, 246 (1949)).

By declining to reconsider *Norvil* while also affirming a sentence based in part on post-arrest misconduct, *Garcia* rejected the premise that reliance on an impermissible sentencing consideration *per se* constitutes fundamental error.[5] *Garcia* also did not appear to place any burden on the State, even while noting that the Fourth District had done so. *See* 346 So. 3d at 585. Rather, *Garcia* kept the burden on the defendant, finding no "fundamental error in Garcia's unpreserved claim." *Id.* at 587. Justice Labarga's separate opinion echoes these themes. Justice Labarga wrote, "the trial court improperly considered the postarrest misconduct that Garcia committed while out on bond." *Id.* at 587 (Labarga, J., concurring in result). However, he agreed with "the majority's conclusion that Garcia is not entitled to relief because the trial court's error did not amount to fundamental error, a more stringent standard of review than the harmless error standard that would have applied had a contemporaneous objection been made when the improper evidence was presented." *Id.*

Applying the *Garcia* framework, "[w]e cannot say that" Nelson's 87.23-month sentence "reflects the trial court's having committed fundamental error on the order of an illegal sentence." *Id.* at 586 (majority opinion). While the record shows that the trial

---

[5] *Garcia* declined to reconsider *Norvil*. But it nonetheless made clear that what the sentencing court had done was permissible under federal precedent. *Garcia* observed that federal courts uniformly "allow a sentencing judge to consider a defendant's conduct—even if it has been the subject of an acquitted charge—as long as the conduct itself is established by a preponderance of the evidence." 346 So. 3d at 586 n.5. And it noted that Garcia's "sentencing judge gave no indication of having given weight to any arrest or charge supported merely by probable cause," *id.* at 586, but instead "considered his conduct while out on bond, and had indeed made a ruling on evidence relating to that conduct in revoking his bond, prior to sentencing," *id.* at 586 n.5.

court may have relied on Nelson's keeping of firearms within his home—a factor that he asserts, and we can assume without deciding, was impermissible—it also reflects that the court heard extensive argument on Nelson's downward-departure request. That argument included other facts about Nelson's offenses, including his own testimony substantiating the court's finding that "sheer greed" motivated his drug sales. Moreover, the court did not impose any kind of plainly illegal sentence that *Garcia* categorized as fundamentally erroneous. *See id.* at 585–86. Rather, the court exercised its discretion to apply the trafficking enhancement and then imposed a bottom-of-the-guidelines sentence (which, pursuant to the plea agreement, was also the agreed-upon cap). While it is true that, unlike in *Garcia*, the sentencing court here explicitly discussed the factor that Nelson contends is impermissible, this distinction makes no difference, as *Garcia*'s framing of the issue assumed that a *Norvil* sentencing error had been committed. *See id.* at 585 (defining the issue as "[w]hether it is fundamental error for a trial judge to consider evidence of any postarrest misconduct in fashioning a sentence"); *see also id.* at 584 n.4 (declining to reconsider *Norvil*).

*Garcia*'s abrogation of our fundamental-error framework in this context comports with how the Florida Supreme Court has described fundamental error elsewhere. For example, the Court has remarked that, "'[t]o justify not imposing the contemporaneous objection rule,'" a fundamental error "'must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *State v. Spencer*, 216 So. 3d 481, 484–85 (Fla. 2017) (quoting *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991)). We certainly cannot characterize Nelson's asserted error in that manner. While we recognize that the trial court here appeared to place even greater weight on the allegedly impermissible factor than the *Garcia* trial court did, the additional weight is offset by the improbability that it made any difference in the ultimate sentence. Were Nelson to prevail in this appeal, and were we to remand for re-sentencing, Nelson would receive a lower sentence only if the court exercised its discretion not to apply the trafficking enhancement, exercised its discretion to grant a downward departure, or both. *Garcia*, by contrast, found no fundamental error where the defendant faced a sentencing range of 34.8 to 360

months as calculated under the Criminal Punishment Code, the defendant asked for a downward departure to probation, and the defendant received an 84-month sentence—a sentence firmly above the bottom of the calculated range. 346 So. 3d at 584.

Nelson thus presents a particularly weak case for fundamental error. He asks us to find fundamental error in a bottom-of-the-guidelines sentence where the trial court considered a variety of evidence concerning the circumstances of his offenses, including his pecuniary motive, and where the only possible prejudice to him resulted from determinations over which the trial court has wide discretion. In sum, Nelson's sentence could well have been obtained without the assistance of the purported error that he alleges. *See Spencer*, 216 So. 3d at 484–85. And in light of *Garcia*, we no longer can treat error in such a sentence as *fundamental* error.

## V.

For the foregoing reasons, we affirm Nelson's sentences.

AFFIRMED.

EISNAUGLE and HARRIS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____